816 P.2d 489

**BENEFICIAL FINANCE COMPANY OF NEW MEXICO, Plaintiff–Appellant,**

v.

**Pedro ALARCON and Mervyn's Inc., Jesus Manuel Enriquez, a/k/a Jesus Enriquez, Defendants–Appellees.**

**BENEFICIAL FINANCE COMPANY OF NEW MEXICO, Plaintiff–Appellee,**

v.

**Pedro ALARCON, Defendant– Cross–Claimant–Appellee,**

v.

**Jesus Manuel ENRIQUEZ, Defendant– Cross–Claimant–Appellant.**

**Nos. 18969, 19269.**

Supreme Court of New Mexico.

Aug. 19, 1991.

Rehearing Denied Sept. 11, 1991.

Lewis C. Cox, III, Albuquerque, for Beneficial Finance Co. of New Mexico.

Ernest Romero, Albuquerque, for Pedro Alarcon.

Juan Montoya, Albuquerque, for Jesus Manuel Enriquez.

## OPINION

FRANCHINI, Justice.

Beneficial Finance Company of New Mexico, Inc. (BFC) appeals from a judgment in favor of Pedro Alarcon on BFC's action to recover on a promissory note and for foreclosure of a real estate mortgage. Cross-appellant Jesus Enriquez appeals the judgment against him, finding him liable to BFC on the promissory note and awarding BFC the full contract amount, interest, punitive damages, and attorney's fees from Enriquez. Enriquez also appeals the judgment against him on Pedro's cross-claim, finding him liable to Pedro on grounds of fraud, and awarding Pedro punitive damages and attorney's fees.

## I. FACTS

Pedro and Consuelo Alarcon were husband and wife for twenty-seven years. Consuelo died in December 1981 after a lengthy illness. Pedro had a seventh grade education. During Consuelo's lifetime, Pedro relied upon her to manage the family finances. Following her death, Pedro relied upon his daughter to write checks which he signed.

Enriquez was Pedro's brother-in-law. In 1976, Enriquez forged Pedro's and Consuelo's signatures on a warranty deed to the Alarcons' home, placing title to the property in his name. Enriquez recorded the deed on November 29, 1976. Using this forged warranty deed, he mortgaged the

Alarcons' home to secure two promissory notes from Albuquerque National Bank (ANB). Enriquez concealed the forged warranty deed, the ANB loan, and the mortgage from the Alarcons. Enriquez failed to repay ANB. He was sued successfully by seven creditors, including ANB, each of whom filed transcripts of judgment on the Alarcons' residence. Enriquez signed a warranty deed reconveying the Alarcons' residence back to the Alarcons, subject to the transcripts of judgment filed of record.

On April 27, 1981, Enriquez appeared at BFC with Consuelo. With her help, Enriquez concealed his true identity and affirmatively represented himself to BFC's representative as Pedro Alarcon. Enriquez forged Pedro's signature on a promissory note and mortgage. The principal amount of the note was $32,979.26 inclusive of a $3,297.00 prepaid finance charge. The mortgage securing the note encumbered the Alarcons' family residence. Without the knowledge of Pedro, Consuelo paid BFC $555.00 a month until she died. Upon learning of the forged note and mortgage, Pedro informed BFC of the forgery on two different occasions. He was told by a BFC representative that the forgery did not matter because his wife had signed the note and mortgage, and he was therefore obligated to pay the note as a community debt. Pedro, under protest, directed his daughter to continue the payments from January 1982 through May 1985. After conferring with an attorney, Pedro stopped paying on the note in May 1985. At that time, the total amount of payments, including both principal and interest, made to BFC from the Alarcons was $28,600.00.

The district court found that Enriquez and Consuelo concealed the fact of the BFC note and mortgage from Pedro. It found that $16,231.84 of the loan was disbursed by BFC to pay off community property debts, and that $7,233.94 was the sole debt of Enriquez. The district court further found Enriquez' conduct deceitful and fraudulent both as to BFC and Pedro.

Relying upon NMSA 1978, Section 40–3–13 A (Repl.Pamp.1989) (spouses must join in transfer, conveyance, mortgage, or lease of community real property), the district court concluded that because Pedro had not signed the mortgage and note in favor of BFC, those instruments were void and of no effect. The court concluded that the fraudulent circumstances surrounding the execution of the documents deprived BFC of the presumption surrounding community debts and, furthermore, that Pedro did not ratify the fraudulent note and mortgage. Finally, the court concluded that BFC was entitled to judgment against Enriquez on the note in the amount of $60,556.94, punitive damages in the amount of $5,000, and costs and attorney's fees; and that Pedro was entitled to recover punitive damages in the amount of $5,000.00, and attorney's fees from Enriquez.

## II. ISSUES ON APPEAL AND CROSS–APPEAL

### A. APPEAL

■ This court has held that "a debt contracted for during marriage is presumptively a community debt and the burden of showing otherwise is on the party so asserting." *First Nat'l Bank v. Abraham*, 97 N.M. 288, 290, 639 P.2d 575, 577 (1982). NMSA 1978, Section 40–3–9 (Repl.Pamp. 1989), defines separate and community debt and provides in subsection (B) that community debt is a debt contracted or incurred by either or both spouses during marriage that is not a separate debt. Thus, a community debt can be made by one spouse. NMSA 1978, Section 40–3–13(A), limits one spouse's power to encumber the community by mandating that both spouses join in "all transfers, conveyances or mortgages or contracts to transfer, convey or mortgage any interest in community real property." The district court correctly found the mortgage in favor of BFC dated April 21, 1981, void and of no effect due to the lack of Pedro's signature.[1]

1. NMSA 1978, § 40–3–13(A) provides in relevant part: "Except for purchase money mortgages and except as otherwise provided in this subsec- tion, the spouses must join in all transfers, conveyances or mortgages or contracts to transfer,

At issue here is whether the underlying obligation represented by the promissory note in favor of BFC is a community or separate obligation. We have allowed the community to be subject to certain debts without the concurrence of one spouse. In *Execu–Systems, Inc. v. Corlis*, 95 N.M. 145, 619 P.2d 821 (1980), we held that a listing agreement signed by one spouse could bind both. Furthermore, in *Lubbock Steel & Supply, Inc. v. Gomez*, 105 N.M. 516, 734 P.2d 756 (1987), we allowed two husbands to incur community indebtedness without their wives' signatures on a promissory note. In this case, the district court determined that BFC was not entitled to a presumption that the note or debts paid from the proceeds of the note were community debts because of the fraudulent circumstances surrounding the execution of the note and mortgage. We will uphold the judgment of the district court if it can be supported by correct legal principles, even though the trial court may have based its decision in whole or in part upon other principles. *In re Will of Skarda*, 88 N.M. 130, 537 P.2d 1392 (1975). To affirm the district court, we must determine that the note was a separate debt and not a community debt.

■ Community debts are defined by exclusion, all debts contracted or incurred by either spouse during marriage that do not fall within one of the specific subsections of NMSA 1978, 40–3–9 A(1) through (6) defining "separate debt." NMSA 1978, Section 40–3–9(A), in relevant part defines separate debt as "a debt which arises from a * * * separate tort committed during marriage." Thus, a spouse who commits a separate tort is individually liable for damages arising out of the tort. *Delph v. Potomac Ins. Co.*, 95 N.M. 257, 620 P.2d 1282 (1980). Whether the tort committed by Consuelo resulted in a "community" or "separate" debt is the issue we must decide. The test to be applied is an "after the fact determination of whether the act in which the spouse was engaged at the time of the tort was one which was of actual or potential benefit to the community." *Id.* at

260, 620 P.2d at 1284. If the tortious act benefitted the community, the resulting debt is a community debt. If the tortious act did not benefit the community, the resulting debt is a separate debt. *Id.*

■ Applying this test to the facts here, there is no evidence that Consuelo's act benefitted the community. The act consisted of allowing her brother to impersonate Pedro, and to forge his name on financial documents. This act, a fraud by one spouse against the other, can be of no benefit to the community. Thus, the underlying obligation represented by the fraudulently executed promissory note in favor of BFC was a separate debt of Consuelo, the fraudulent spouse, as well as her brother.

■ However, BFC next contends that all the proceeds of the note were used to pay off community debts and thus the community was obligated accordingly. Because we have held that the BFC note was a separate debt, the bank has to show that the proceeds from the note were used to pay off community debts, thereby transmuting the funds from separate to community funds. Once initial legal status of property is determined, a change in that status is a transmutation issue which must be proven by clear, strong and convincing evidence. *Estate of Fletcher v. Jackson*, 94 N.M. 572, 613 P.2d 714 (Ct.App.), *cert. denied*, 94 N.M. 674, 615 P.2d 991 (1980). The trial court did not address the transmutation issue, but the court did find that $16,231.84 of the proceeds of the note were disbursed in payment of community property obligations. At trial, there was conflicting evidence on the amount of community debts that were paid with the proceeds of the BFC note. Oral testimony and documentary evidence were presented to the court. Both Pedro and Enriquez testified and the court undoubtedly placed a considerable amount of weight on Pedro's credibility. "Only the trier of facts may weigh evidence, determine the credibility of witnesses, reconcile inconsistent or contradictory statements of witnesses, and decide

convey or mortgage any interest in community real property * * *."

where the truth lies." *Lewis v. Bloom*, 96 N.M. 63, 64, 628 P.2d 308, 309 (1981). The community obligations consisted of the Alarcons' first mortgage and three other loans. The other disbursements made with the proceeds of the note included $7,769.06 to pay off Enriquez' judgment to ANB, and other debts which the court did not classify as community or separate. The court found that the sum of $16,231.84 was community debt. The district court's finding on what debts were community debts is based on substantial evidence. Furthermore, we find that the transmutation of the note's proceeds from separate to community funds was proven by clear and convincing evidence. *See Nichols v. Nichols*, 98 N.M. 322, 327, 648 P.2d 780, 785 (1982) (party must prove transmutation of separate property into community property by clear and convincing evidence). Thus, we hold that the separate funds which were used to pay off the $16,231.84 in community debts transmuted to community funds. The community, having received the benefit of the transmutation, was liable to BFC only for that amount plus interest.

BFC's argument seeking the imposition of an equitable lien against the real property encumbered by the fraudulent note and mortgage is without merit. An equitable lien is not warranted because BFC has been repaid the portion of the note used to pay off the community debt of $16,231.84 plus interest. The Alarcons' total payments of $28,600.00 were more than adequate to compensate BFC for the transmuted funds used to pay off community debts, including the interest of 21.52 percent on the note.

BFC next contends that Pedro ratified the fraudulent note by making payments to BFC until May 1985. The district court found that the payments were made involuntarily and under protest. A party held to a ratification shall have had full knowledge of all the material facts concerning the transaction. *Romero v. J.W. Constr. Co.*, 98 N.M. 658, 662, 651 P.2d 1302, 1306 (Ct.App.1982). Additionally, an intent to ratify, which is a question of fact, must be shown to establish a ratification.

*C & H Constr. & Paving Co. v. Citizens Bank*, 93 N.M. 150, 164, 597 P.2d 1190, 1204 (Ct.App.1979). After a review of the record, we find substantial evidence to support the trial court's finding that Pedro's payments on the note were made under protest and involuntarily, and therefore, he did not ratify the fraudulent note and mortgage.

Finally, BFC argues that Pedro should be equitably estopped from denying his obligation to BFC for reasons of detrimental reliance and latches. "It is fundamental that matters not brought into issue by the pleadings and upon which no decision of the trial court has been sought, or fairly invoked, cannot be raised on appeal." *Albuquerque Productions Credit Ass'n v. Martinez*, 91 N.M. 317, 319, 573 P.2d 672, 674 (1978). Upon review of the record, we find that the evidence and findings of fact which BFC contend raised the issues of estoppel, detrimental reliance, and latches below, were evidence and findings relating solely to the issue of ratification. Therefore, we find that BFC did not raise these issues at the trial court level and we will not consider them. *See Wolfley v. Real Estate Comm'n*, 100 N.M. 187, 189, 668 P.2d 303, 305 (1983) (theories, defenses or other objections will not be considered when raised for the first time on appeal).

## B.  CROSS–APPEAL

Enriquez contends that Pedro is barred by NMSA 1978, Section 37–1–4 (Repl.Pamp. 1990), from asserting his cross-claim against Enriquez. Section 37–1–4 provides that actions seeking relief on the basis of fraud must be brought within four years. NMSA 1978, Section 37–1–7, provides that actions for relief on grounds of fraud shall not be deemed to have accrued until the fraud is discovered by the party aggrieved. Although the forgery occurred in April 1981, Pedro was unaware of the forger's identity until October 1985, when Enriquez admitted to the forgery in his deposition. The cross-claim against Enriquez for fraud was filed August 27, 1987, well within the statute of limitations.

Furthermore, "where a party against whom the cause of action accrues prevents the one entitled to bring the cause from obtaining knowledge thereof by fraudulent concealment, * * * the statutory limitation on the time for bringing the action will not begin to run until the right of action is discovered, or, by the exercise of ordinary diligence, could have been discovered." *Hardin v. Farris*, 87 N.M. 143, 146, 530 P.2d 407, 410 (1974). We find no merit in Enriquez' argument on statute of limitations.

■ Enriquez maintains that he was Pedro's agent and that ratification therefore relieves him from all responsibility. The trial court correctly found that Enriquez was not Pedro's agent. This finding is based on substantial evidence including Enriquez' fraud, lack of a power of attorney, or permission to sign the note and mortgage.

Enriquez finally argues that because of BFC's negligence in the execution of the promissory note, his fraudulent actions should somehow be excused. The alleged negligence consists of BFC not verifying the identity of the person who signed the note and mortgage. Even if BFC was negligent, an issue never proven at trial, Enriquez' argument is not well taken. "Contributory negligence has no place in ... fraud actions." *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1337 (10th Cir.1984). We affirm the district court's finding of fraud and its award of exemplary and punitive damages, attorney's fees and costs against Enriquez.

For all of the foregoing reasons, the judgment of the district court is affirmed.

IT IS SO ORDERED.

SOSA, C.J., concurs.

RANSOM, J. (specially concurs).

RANSOM, Justice (specially concurring).

I concur specially to state I do not agree that use of the "transmutation of funds" concept is necessary or helpful as rationale to decide this case. The parties did not raise or brief the application of a transmu-

tation doctrine to the circumstances found here. I have no opinion in that regard.

In deciding whether a tort committed by the spouse gives rise to a separate or to a community debt, it should suffice that we look to *Delph v. Potomac, Inc.* (as noted in the majority opinion) in which the test is stated to be whether the tortious act was of "actual or potential benefit" to the community. To the extent Consuelo was acting for the benefit of the community, the community was responsible under either contract or quasi contract theories for the loan proceeds used to pay community debts. I do not understand, in relation to third parties, why "fraud by one spouse against the other can be of no benefit to the community." The fact that the loan proceeds in this case, obtained by fraud, actually were used to pay off community debts would seem to be all that is required to show that the tortious act *did* benefit the community, and for this reason the community should be responsible for that portion of the debt.