861 P.2d 935

The HUNTINGTON NATIONAL BANK,
a National Banking Association,
Plaintiff–Appellee,

v.

Lesley G. SPROUL, Defendant–
Appellant.

No. 19965.

Supreme Court of New Mexico.

Sept. 13, 1993.

Rehearing Denied Oct. 14, 1993.

Calvin J. Hyer, Jr., Albuquerque, for plaintiff-appellee.

Atkinson & Kelsey, P.A., Thomas C. Montoya, Albuquerque, for defendant-appellant.

## OPINION

BACA, Justice.

Defendant-appellant Lesley Sproul ("Mrs. Sproul") appeals the district court's determination that an Ohio judgment domesticated in New Mexico, entered in favor of Plaintiff-appellee Huntington National Bank (the "Bank") against Sproul's husband, Elmer Sproul ("Mr. Sproul"), constituted a community debt under NMSA 1978, Section 40–3–9 (Repl.Pamp.1989). Mrs. Sproul also appeals from the district court's order subjecting the Sprouls' residence, owned as community real property, to foreclosure and judicial sale pursuant to NMSA 1978, Section 40–3–11 (Repl. Pamp.1989), to satisfy the Bank's judgment against Mr. Sproul. We address the following issues on appeal: (1) Whether the

district court erred by applying New Mexico law to determine whether the judgment on the Bank's note constituted a community debt of Mr. and Mrs. Sproul; (2) whether the district court erred when it concluded that the judgment against Mr. Sproul was the community debt of the Sprouls under Section 40–3–9; (3) whether NMSA 1978, Section 40–3–13(A) (Repl.Pamp.1989), requires joinder of both spouses when the creation of a community debt ultimately renders community real property liable for satisfaction of the debt; (4) whether the failure of a creditor to join both spouses in an underlying action on a marital debt precludes the creditor from later foreclosing upon community real property to satisfy the debt; and (5) whether the district court misapplied principles of full faith and credit when it ordered the judicial sale of the Sprouls' residence. We note jurisdiction under SCRA 1986, 12–102(A)(1) (Repl. Pamp.1992), and affirm.

I

Mr. and Mrs. Sproul, residents of Bernalillo County, New Mexico, were married on August 27, 1949. Thirty-eight years later, on July 20, 1987, Mr. Sproul signed a commercial loan note with the Bank, a banking association located in Columbus, Ohio, for the amount of $112,700. The note contained a choice-of-law provision, which stated that the note would be governed by and construed under Ohio law. Mrs. Sproul did not sign the note and was not otherwise a party to the transaction between the Bank and her husband.

Mr. Sproul used the funds obtained from the Bank loan to purchase 70,658 shares of stock in a company named Blandford Park Limited and pledged these shares as security for the loan. Mr. Sproul sustained losses from his investment when the stock depreciated and he subsequently defaulted on the note. Following his default, the Bank brought suit against Mr. Sproul and Garth Guy, the guarantor of Mr. Sproul's loan, in the Court of Common Pleas of Franklin County, Ohio. On February 1, 1989, the Court of Common Pleas entered default judgment against Mr. Sproul for the loan amount of $112,700, accrued interest of $15,431.04, future interest on the note, late charges totalling $25, and costs.

On March 7, 1989, the Bank filed a complaint against Mr. Sproul in the Bernalillo County District Court, requesting domestication of the Ohio judgment. On May 8, 1989, the district court domesticated the Ohio judgment in New Mexico by entering a default judgment against Mr. Sproul for the amounts specified in the Ohio judgment, attorney's fees of $3,500, and costs totalling $75. The Bank filed a transcript of judgment with the Bernalillo County Clerk on May 26, 1989.

On February 2, 1990, the Bank filed an additional complaint against both Mr. and Mrs. Sproul, seeking to foreclose its judgment lien on the couple's New Mexico residence. The Bank requested that the district court find that the judgment against Mr. Sproul was the community debt of the Sprouls. Following a nonjury trial on October 19, 1990, the district court determined that the judgment constituted a community debt of both Mr. Sproul and Mrs. Sproul under Section 40–3–9. The district court subsequently subjected the Sprouls' residence to foreclosure and to judicial sale pursuant to the priorities for satisfaction of community debts found in Section 40–3–11. Mrs. Sproul moved for a stay of foreclosure proceedings pending appeal. The district court granted Mrs. Sproul's motion for stay, and she appealed the district court's decision to this Court.

II

A threshold issue presented by this appeal is whether the district court erred when it concluded that New Mexico law applied to determine whether the judgment on the Bank's note was the community debt of Mr. and Mrs. Sproul. Mrs. Sproul contends that the district court erred by applying New Mexico law because the commercial loan note between Mr. Sproul and the Bank contained a choice-of-law provision stating that the note would "be governed by and construed in accordance with the law of the State of Ohio." Mrs. Sproul asserts that this choice-of-law

clause required the district court to apply Ohio law when enforcing the Bank's judgment and that under Ohio law the Bank would be precluded from foreclosing on her interest in the Sprouls' residence in order to satisfy its judgment against Mr. Sproul.[1]

To support her argument, Mrs. Sproul asserts that the parties to a contract may select the law to govern the performance and enforcement of a contract between them and that this Court will give effect to the parties' choice-of-law provision in a contract controlled by New Mexico's Uniform Commercial Code, NMSA 1978, Sections 55–1–101 to –12–108 (Orig.Pamp., Repl.Pamp. & Cum.Supp.1992) (the "UCC"), when the law chosen bears a relationship to the contract.[2] *Nez v. Forney,* 109 N.M. 161, 163, 783 P.2d 471, 473 (1989); *United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.,* 108 N.M. 467, 470, 775 P.2d 233, 236 (1989); *Jim v. CIT Fin. Servs. Corp.,* 87 N.M. 362, 364, 533 P.2d 751, 753 (1975). Mrs. Sproul's argument, however, fails to recognize that a cause of action on a judgment is different from the cause of action upon which the judgment was based. *See City of Philadelphia v. Bauer,* 97 N.J. 372, 478 A.2d 773, 776 (1984) (citing *Milwaukee County v. M.E. White Co.,* 296 U.S. 268, 275, 56

S.Ct. 229, 233, 80 L.Ed. 220 (1935)). In this case, the Ohio judgment rendered on the Bank's note constitutes an obligation that is separate and distinct from the underlying note itself. The Ohio court's rendition of the final money judgment extinguished the Bank's note and replaced the claim based on the note with a new cause of action on the judgment. *See Bassett v. Eagle Telecommunications, Inc.,* 750 P.2d 73, 76 (Colo.Ct.App.1987) (upon entry of judgment, defendant's liability under preceding claims ceases to exist and is replaced by new liability under the judgment); *Neel v. First Fed.Sav. & Loan Ass'n,* 207 Mont. 376, 675 P.2d 96, 101 (1984) ("[W]hen a claim on a contract is reduced to judgment, '[t]he contract between the parties is voluntarily surrendered and canceled by merger in the judgment and ceases to exist.'") (citation omitted); *Woodcraft Constr., Inc. v. Hamilton,* 56 Wash.App. 885, 786 P.2d 307, 308 (1990) (a valid final money judgment extinguishes the underlying claim and gives rise to a new cause of action on the judgment). While the note itself was controlled by its choice-of-law clause, the note's contractual obligations were superseded by new rights and obligations upon rendition of judgment. No contractual basis existed following judgment that required application of the

---

1. We agree with Mrs. Sproul's contention that Ohio law would likely preclude the Bank from satisfying its judgment against her husband from her interest in jointly owned real property. Unlike New Mexico, Ohio is a separate property state. Ohio recognizes tenancies in common, joint tenancies, and tenancies by the entireties as the three methods by which cotenants may jointly own real property. *See Koster v. Boudreaux,* 11 Ohio App.3d 1, 4–6, 11 BR 12, 15–18, 463 N.E.2d 39, 43–44 (1982). As a general rule, judgment creditors of one tenant in common may enforce their rights against that individual cotenant's property interest, 4A Richard R. Powell, *The Law of Real Property* ¶ 605[2] (rev. ed. 1993), but not against the separate property interests of the other cotenants. *See, e.g., United States v. Estes,* 654 F.Supp. 49, 51 (S.D.Ohio 1986). Similar to the general rule applicable to tenancies in common, the judgment creditors of one joint tenant can reach that individual tenant's interest in the jointly owned real property, 48A C.J.S. *Joint Tenancy* § 32 (1981), but cannot reach the interests of the other joint tenants. *See Estes,* 654 F.Supp. at 51; *Anderson v. South-*

ern *Pac. Co.,* 264 Cal.App.2d 230, 70 Cal.Rptr. 389, 390 (Ct.App.1968); *First Nat'l Bank v. Energy Fuels Corp.,* 200 Colo. 540, 618 P.2d 1115, 1118–19 (1980), *rev'g Chatfield Bank v. Energy Fuels Corp.,* 42 Colo.App. 233, 599 P.2d 923 (1979). Finally, judgment creditors of an indebted spouse are completely precluded from enforcing the judgment by foreclosing against real property owned by both spouses, even with respect to the debtor spouse's interest, when the spouses own the real property as tenants by the entireties. *Id.; Koster,* 463 N.E.2d at 47; *Donvito v. Criswell,* 1 Ohio App.3d 53, 56, 1 OBR 286, 288, 439 N.E.2d 467, 472 (1982).

2. In the instant case, the commercial loan note executed by the Bank and Mr. Sproul is governed by and subject to Article 3 of the UCC. *See* NMSA 1978, § 55–3–102 (making Article 3 applicable to negotiable instruments); NMSA 1978, § 55–3–104 (defining "negotiable instrument"); NMSA 1978, § 55–3–102(4), now codified as NMSA 1978, § 55–3–103(d) (Cum.Supp. 1992) (making Article 1, including NMSA 1978, § 55–1–105, applicable throughout Article 3).

choice-of-law clause to enforcement of the judgment. *See id.* at 308. Accordingly, we hold that the note's choice-of-law clause did not require the district court to apply Ohio law when enforcing the judgment rendered on the note.

■ Absent the applicability of the note's choice-of-law clause to the judgment, we address whether the district court was correct in applying New Mexico law to the enforcement of the judgment. In this case, the Bank instituted an action in New Mexico district court to domesticate the Ohio judgment. Pursuant to the Bank's complaint and following notice to Mr. Sproul, the district court granted the Bank personal judgment against Mr. Sproul in the State of New Mexico. Once the New Mexico judgment was entered, the judgment obtained in Ohio lost its original identity as an Ohio judgment and became a money judgment of the state of New Mexico. *See City of Philadelphia,* 478 A.2d at 776 (noting that under the doctrine of merger, a foreign judgment loses its separate identity and becomes a simple money judgment once a judgment on the foreign judgment is obtained in the enforcing state); *cf. C & J Travel, Inc. v. Shumway,* 161 Ariz. 33, 775 P.2d 1097, 1099 (Ct.App.1989) (finding that New Hampshire judgments were transformed into valid Arizona judgments when creditors chose to file New Hampshire judgments in Arizona pursuant to Arizona's Uniform Enforcement of Foreign Judgments Act). Because the Ohio judgment was converted into a New Mexico judgment, New Mexico law was applicable to its enforcement. 46 Am.Jur.2d *Judgments* § 897, at 1031 (1969) ("Matters relating to the enforcement of judgments are governed by the law of the forum."); *cf.* NMSA 1978, § 39–4A–3 (Repl.Pamp.1991) (requiring that foreign judgments filed pursuant to New Mexico's Foreign Judgments Act be treated "in the same manner as a judgment of the district court of this state" and permitting foreign judgments to be enforced or satisfied in the same manner as

New Mexico judgments). Accordingly, we hold that the district court correctly applied New Mexico law to determine whether the New Mexico judgment against Mr. Sproul constituted a community debt of Mr. and Mrs. Sproul.

### III

■ We next address whether the district court erred when it concluded, under Section 40–3–9, that the judgment against Mr. Sproul was the community debt of Mr. and Mrs. Sproul. New Mexico recognizes the distinction between community debts and separate debts by statute. *See* Section 40–3–9; W.S. McClanahan, *Community Property Law in the United States* § 10:4(b), at 484 (1982). Community debts are defined by exclusion in Section 40–3–9(B). *Beneficial Fin. Co. v. Alarcon,* 112 N.M. 420, 423, 816 P.2d 489, 492 (1991). Section 40–3–9(B) states that a community debt is any debt "contracted or incurred by either or both spouses during marriage" that does not fall within one of the specifically enumerated categories of separate debt defined by Section 40–3–9(A)(1) through (6). We presume that a debt created during marriage is a community debt, and the party asserting otherwise bears the burden of demonstrating that the marital debt constitutes a separate debt under one of the categories set forth in Sections 40–3–9(A)(1) through (6). *See Alarcon,* 112 N.M. at 422, 816 P.2d at 491; *First Nat'l Bank v. Abraham,* 97 N.M. 288, 290, 639 P.2d 575, 577 (1982). Because Section 40–3–9(B) defines a community debt as any debt acquired during marriage by "either or both spouses," one spouse can incur a community debt without the participation of the other spouse. *Alarcon,* 112 N.M. at 422, 816 P.2d at 491; *Execu-Systems, Inc. v. Corlis,* 95 N.M. 145, 147, 619 P.2d 821, 823 (1980); *Fernandez v. Fernandez,* 111 N.M. 442, 444, 806 P.2d 582, 584 (Ct.App. 1991). Under Section 40–3–11(A), community debts are first satisfied from community property.[3]

---

**3.** Section 40–3–11(A) states that, excluding the residence of the spouses, a community debt is first satisfied from all of the spouses' community property and from "all property in which each spouse owns an undivided equal interest as a joint tenant or tenant in common." If the

Mrs. Sproul asserts that the district court erred by classifying the judgment entered against her husband as a community debt and maintains that under provisions of Section 40–3–9(A), the judgment constitutes Mr. Sproul's separate obligation. Accordingly, Mrs. Sproul contends that under NMSA 1978, Section 40–3–10 (Repl. Pamp.1989), her one-half community interest in the residence may not be foreclosed upon to satisfy Mr. Sproul's separate obligation.[4]

## A

■ Mrs. Sproul first maintains that the Bank's judgment against her husband qualifies as the separate debt of Mr. Sproul under Section 40–3–9(A)(3), which denominates as a separate debt any marital debt that is "designated as a separate debt of a spouse by a judgment or decree of any court having jurisdiction." Mrs. Sproul reasons that although the judgment entered against Mr. Sproul by the Ohio Court of Common Pleas contained no language designating the Bank debt as Mr. Sproul's separate obligation, the judgment nonetheless amounted to a judicial decree that the debt was Mr. Sproul's separate debt because the judgment was entered solely against Mr. Sproul and, under Ohio law, the judgment debt of one spouse cannot be satisfied from the nondebtor spouse's interest in jointly held property.

We find no cases that consider whether a marital debt can be considered a separate debt of one spouse under Section 40–3–9(A)(3) in the absence of language in a judgment or decree designating the debt as that spouse's separate obligation. We believe, however, that the language of Section 40–3–9(A)(3) is clear. In order for a marital debt to constitute a separate debt under Section 40–3–9(A)(3), the judgment or decree rendered by a court having jurisdiction must contain an express statement designating the debt as the separate debt of one spouse.

In the instant case, the Entry of Judgment of the Ohio Court of Common Pleas noted jurisdiction over the subject matter and the parties involved in the Bank's action, recounted that Mr. Sproul had been served with a summons and had failed to answer, and rendered judgment in favor of the Bank and against Mr. Sproul. Nowhere in the Ohio judgment did the Court of Common Pleas declare the underlying debt the sole debt of Mr. Sproul or even appear to address the issue of whether the debt constituted Mr. Sproul's separate debt or the debt of the marital community. Consequently, we cannot agree that the Ohio judgment designated that the debt incurred by Mr. Sproul was his separate debt. We hold that the trial court did not err when it decided that the debt was not Mr. Sproul's separate debt under Section 40–3–9(A)(3).

## B

Mrs. Sproul next argues that the judgment should be considered her husband's separate debt because the underlying debt forming the basis of the judgment against Mr. Sproul constituted his separate debt

---

aforementioned property proves insufficient, the community debt must then be satisfied from the spouses' residence, subject to the homestead exemption found at NMSA 1978, § 42–10–9. Section 40–3–11(A). Should the community debt still remain unsatisfied, the separate property of the spouse who incurred the debt is liable to satisfy the debt. *Id.* If both spouses incurred the debt, the separate property of each is jointly and severally liable to satisfy the debt. *Id.*

**4.** Section 40–3–10(A) requires that the separate debt of a spouse first be satisfied from that spouse's separate property, excluding the debtor spouse's interest in "property in which each of the spouses owns an undivided equal interest as

a joint tenant or tenant in common." If such property proves to be insufficient, then the debt must be satisfied from "the debtor spouse's one-half interest in the community property or in property in which each spouse owns an undivided equal interest as a joint tenant or tenant in common, excluding the residence of the spouses." Section 40–3–10(A). If the debt still remains unsatisfied, then the debtor spouse's interest in the residence of the spouses shall be used to satisfy the debt, subject to the nondebtor spouse's homestead exemption under § 42–10–9. *Id.* Under no circumstances would the nondebtor spouse's separate property or interest in community property be subject to satisfy the separate debt of the debtor spouse. *Id.*

under Section 40–3–9(A)(4). Section 40–3–9(A)(4) permits a spouse and the spouse's creditor to agree that a marital debt is the separate obligation of the debtor spouse at the time the debt is incurred. William A. Reppy, Jr. & Cynthia A. Samuel, *Community Property in the United States* 266 (2d ed. 1982). In order to designate a marital debt as the separate debt of one spouse, the debtor spouse must identify the debt as that spouse's separate debt in writing to the creditor at the time the debt is created. Section 40–3–9(A)(4).

Mrs. Sproul is unable to point to a written provision in the note or to any other written agreement between Mr. Sproul and the Bank that identifies the debt as Mr. Sproul's separate obligation. Instead, Mrs. Sproul argues that the debt is identified in writing to the Bank as Mr. Sproul's separate debt because Mr. Sproul was the sole signatory of the note, because the note contained an Ohio choice-of-law provision, and because Ohio law precludes the Bank from resorting to Mrs. Sproul's property interests in order to satisfy a debt incurred solely by Mr. Sproul. In essence, Mrs. Sproul argues that these circumstances obviate the need to comply strictly with the requirements of Section 40–3–9(A)(4).

We find one New Mexico case that examines whether strict compliance with the requirements of Section 40–3–9(A)(4) is necessary to establish that a marital debt is the separate debt of one spouse. In *Fernandez v. Fernandez*, a divorce action in which the former husband appealed from the final divorce decree, our Court of Appeals upheld the district court's determination that a marital debt created solely by the husband was his separate debt under Section 40–3–9(A)(4) even though the promissory note between the husband and the lender contained no statement that the loan was the husband's separate obligation. *Fernandez*, 111 N.M. at 444, 806 P.2d at 584. The Court of Appeals concluded that because the evidence in the case supported the trial court's determination that the par-

ties intended for the debt to be the husband's separate debt, strict compliance with the requirements of Section 40–3–9(A)(4) was unnecessary.[5] *Fernandez*, 111 N.M. at 444, 806 P.2d at 584.

We find, however, that *Fernandez* is distinguishable from the instant case. The Court of Appeals in *Fernandez* held that substantial compliance with the terms of Section 40–3–9(A)(4) was sufficient for a marital debt to be considered one spouse's separate debt *as between spouses in a divorce proceeding. Id.* The Court of Appeals expressly refused to address the issue presented by the instant case: Whether substantial compliance with Section 40–3–9(A)(4) is sufficient to establish the separate nature of the marital debt as between a nondebtor spouse and the debtor spouse's creditor. *Id.*

■ We hold that as between a spouse and the other spouse's creditor, Section 40–3–9(A)(4) requires that the debtor spouse expressly communicate the separate nature of a marital debt to a creditor in writing when creating a marital debt intended to be that spouse's separate obligation. The fundamental purpose behind the written notice requirement of Section 40–3–9(A)(4) is to protect creditors who might be unaware that the debtor spouse intends to create a separate debt, rather than a community debt. *Id.* Such protection is necessary because the assets available to satisfy the separate debt of one spouse are limited in comparison to the assets available to satisfy a community debt. *Compare* § 40–3–10(A) (limiting satisfaction of separate debts to the debtor spouse's separate property and one-half interest in the community property "or in property in which each spouse owns an undivided equal interest as a joint tenant or tenant in common....") *with* § 40–3–11(A) (permitting community debts to be satisfied from all community property and from all property "in which each spouse owns an undivided equal interest as a joint tenant or tenant in common,"

---

5. As justification for its conclusion, the Court of Appeals determined that a district court's power to divide marital assets in an equitable manner also embraces the ability to give effect to the intentions of the parties, even if the parties fail to comply strictly with the community property or debt statutes. *Fernandez*, 111 N.M. at 444, 806 P.2d at 584.

and from the debtor spouse's separate property).

Because Section 40-3-9(A)(4) was enacted to protect creditors, requiring anything less than strict compliance with the statute in the instant case and like cases would defeat the statute's clear purpose and effectively write the statute out of existence. Accordingly, we refuse to extend *Fernandez* to the facts of this case. We hold that the district court did not err when it declined to classify the judgment debt of Mr. Sproul as his separate debt under Section 40-3-9(A)(4).

### IV

Having upheld the district court's determination that the judgment against Mr. Sproul was the community debt of the Sprouls, we address whether the district court erred by ordering the judicial sale of the Sprouls' community residence to satisfy the judgment. Mrs. Sproul argues that the filing of judgment and foreclosure of the judgment liens is void under Section 40-3-13(A), because she neither joined in the execution of the note itself nor was joined as a party in the Ohio proceedings or the Bank's initial proceeding in New Mexico when the judgment was domesticated in New Mexico by default. Mrs. Sproul's argument raises two distinct issues: First, whether Section 40-3-13(A) requires that both spouses join in the execution of a note when community real property may eventually be liable for satisfaction of a judgment on the note in the event of default; and second, whether the creditor of a debtor spouse must join both spouses in an underlying action on a marital debt when the spouses' community real property might ultimately be subject to satisfy the debt. We address each issue in turn.

### A

We begin by addressing whether Section 40-3-13(A) requires both spouses to join in the execution of a note when the note creates a community debt, thus making community real property liable for satisfaction of the debt in the event of default. Section 40-3-13(A), enacted to preclude one spouse from alienating the community's real property absent the other spouse's consent, *Shadden v. Shadden (In re Estate of Shadden)*, 93 N.M. 274, 281, 599 P.2d 1071, 1078 (Ct.App.), *cert. denied*, 93 N.M. 172, 598 P.2d 215 (1979), states in pertinent part that:

> Except for purchase-money mortgages ..., the spouses must join in all transfers, conveyances or mortgages or contracts to transfer, convey or mortgage any interest in community real property.... The spouses must join in all leases of community real property ... if the initial term of the lease, together with any option or extension ... may exceed five years, or ... is for an indefinite term.

Section 40-3-13(A). The joinder requirement of Section 40-3-13(A) has been interpreted to require the signature of both spouses on documents transferring, conveying, mortgaging, or leasing community real property. *See Hannah v. Tennant*, 92 N.M. 444, 446, 589 P.2d 1035, 1037 (1979). Under Section 40-3-13(A), transactions made by one spouse alone in violation of its provisions are "void and of no effect." Section 40-3-13(A); *Hannah*, 92 N.M. at 446, 589 P.2d at 1037.

Mrs. Sproul first argues that under the circumstances presented in this case, the judgment against her husband is completely unenforceable because the note forming the basis of the judgment constituted a "transfer" of community real property under Section 40-3-13(A), and in the absence of her concurring signature amounted to a void transaction. We do not agree. The note in no way purported to transfer, convey, mortgage, or lease community real property. Thus, under the clear language of Section 40-3-13(A), the note did not constitute a transaction that required both spouses' signatures. *See Waksman v. City of Albuquerque*, 102 N.M. 41, 43, 690 P.2d 1035, 1037 (1984) (absent a contrary intent, courts give effect to statutory provisions as written, giving the words their plain meaning); *Gonzales v. Oil, Chem. & Atomic Workers Int'l Union*, 77 N.M. 61, 68, 419 P.2d 257, 262 (1966) (a statute must

be read and given effect as written) (citing *Burch v. Foy*, 62 N.M. 219, 308 P.2d 199 (1957)).

▇ Mrs. Sproul next argues that under Section 40–3–13(A), Mr. Sproul was without power to encumber the community real property absent Mrs. Sproul's joinder. Thus, Mrs. Sproul contends that Mr. Sproul's sole signature on the note could do no more than obligate his separate property and his one-half interest in the community personal property for repayment of the debt. In this case, however, Mr. Sproul did not encumber any of the Sproul's community real property by signing the Bank note. The note, secured by the Blandford stock, merely required the Sprouls to pay back a loan incurred by Mr. Sproul. By signing the note, Mr. Sproul unilaterally created a community debt, which is permitted under New Mexico law. *See* Section 40–3–9(B). It was the judgment lien arising after Mr. Sproul defaulted on the note, and not the note itself, that encumbered the Sprouls' community real property. *See Black's Law Dictionary* 527 (6th ed.1990) (defining an encumbrance as a "claim, lien, charge, or liability attached to and binding real property; *e.g.* a mortgage; judgment lien; mechanics' lien; lease; security interest; easement or right of way; accrued and unpaid taxes."). Thus, we understand Mrs. Sproul's argument to be that under Section 40–3–13(A), one spouse cannot unilaterally incur a community debt when a subsequent judgment on the debt would encumber community real property.

Mrs. Sproul contends that New Mexico case law supports her interpretation of Section 40–3–13(A). In particular, Mrs. Sproul relies upon *Shadden*, 93 N.M. at 280, 599 P.2d at 1077, a case in which the decedent-husband made a promissory note payable to himself from the marital community and subsequently devised the note to his son. *Shadden*, however, was expressly limited to its facts and is inapplicable to the instant case. *See id.* at 276–82, 599 P.2d at 1073–79.

In *Shadden*, the Court of Appeals recognized that the decedent's promissory note, not signed by his wife, constituted a community debt and that under NMSA 1978, Section 45–2–804(B) (Repl.Pamp.1989), the decedent's son, as devisee of the note, could normally subject the entire community to payment of the debt. *Shadden*, 93 N.M. at 280, 599 P.2d at 1077. Notwithstanding, the Court of Appeals construed Section 40–3–13 to prohibit the decedent from encumbering community real property absent his wife's joinder and held that neither the decedent during his lifetime, nor his son standing in the decedent's shoes, had the right to subject the community real property to payment of the debt absent the concurring signature of the decedent's wife. *Shadden*, 93 N.M. at 282, 599 P.2d at 1079. The Court of Appeals, limiting its holding to those cases in which a member of the community takes a note from himself and is therefore charged with the knowledge that any document executed by one spouse alone cannot subject the community real property to repayment of the note, stated:

> The circumstances of this case are not the same as they would be if a stranger to the community had taken decedent's note. [A stranger to the community] might well expect the entire community to answer for the debt if [the] borrower died before payment, because the law [under Section 45–2–804(B) ] grants [the holder of the note] that expectation.

*Id.* at 281–82, 599 P.2d at 1078–79.

In light of the foregoing language, the instant case presents the exact factual scenario to which the holding in *Shadden* does not apply. Although Mrs. Sproul did not join in the execution of the note, the Bank, a stranger to the Sprouls' marital community, was nonetheless granted an expectation under New Mexico law that the community property of Mr. and Mrs. Sproul would be subject to satisfy the community debt in the event of default. *See* § 40–3–9(B) (either spouse alone can create a community debt); § 40–3–11(A) (all community property is subject to satisfaction of community debts). Because *Shadden* was expressly limited to its facts and held not to apply to cases such as the instant case,

Mrs. Sproul's reliance on *Shadden* is misplaced.

While *Shadden* does not apply to the instant case, we note that a later case from this Court, *First State Bank v. Muzio*, 100 N.M. 98, 666 P.2d 777 (1983), has perpetuated a legal proposition first articulated in *Shadden:* that under Section 40–3–13(A), one spouse is without power to encumber the community real property for repayment of a community debt absent the other spouse's joinder. *See Shadden*, 93 N.M. at 280, 599 P.2d at 1077. In *Muzio*, a case that is factually similar to the instant case, this Court held that a guaranty signed only by Mr. Muzio could not encumber Mrs. Muzio's interest in the community real property because a clause in the guaranty, which automatically made all property interests of the guarantor and his spouse liable to satisfy the debt, violated long-standing principles of New Mexico law.[6] *Muzio*, 100 N.M. at 99, 666 P.2d at 778.

Citing *Shadden* for the proposition that Mr. Muzio's signature on the guaranty could do no more than commit his separate property and his share of the community property to satisfy a subsequent judgment on the guaranty, this Court stated that under Section 40–3–13, "a foreclosure on community real property based on a judgment entered solely against one spouse should not affect the community interest of the other spouse." *Muzio*, 100 N.M. at 99, 666 P.2d at 778. Our Court concluded that Section 40–3–13 "specifically requires both spouses to join if the entire community real property is to be encumbered." *Muzio*, 100 N.M. at 99, 666 P.2d at 778.

The statement that Section 40–3–13(A) requires joinder of both spouses if the community real property is to be encumbered is essentially a correct interpretation of the law. But this statement can be given no greater effect than the clear language of

Section 40–3–13(A) permits. *See Storey v. University of N.M. Hosp.*, 105 N.M. 205, 207, 730 P.2d 1187, 1189 (1986) ("An unambiguous statute should be given effect according to its clear language."). The clear language of Section 40–3–13(A) requires only that spouses join in all transfers, conveyances, or mortgages of community real property, contracts to transfer, convey or mortgage community real property, and leases of community real property that may exceed five years. Section 40–3–13(A) does not require joinder of spouses in an underlying community debt before community real property can be encumbered by a judgment lien arising as a consequence of unfulfilled obligations on the debt. Consequently, nothing in Section 40–3–13(A) prohibits community real property from being encumbered by a judgment lien when one spouse incurs a debt, the debtor spouse defaults on the debt obligation, the debt is adjudged to be a community debt, and the unfulfilled obligation gives rise to a judgment lien against community real property.

Additional reasons support construing Section 40–3–13(A) as not requiring joinder of both spouses in creating a community debt whenever a judgment lien on the debt might later encumber community real property. Because any debt may remain unpaid, the potential exists for a judgment lien to encumber community real property in every case where one spouse creates a community debt and the spouses own community real property. The interpretation of Section 40–3–13(A) suggested by Mrs. Sproul would require a creditor to procure the signatures of both spouses in any transaction when one spouse alone attempts to create a community debt. Without both signatures, a creditor would be precluded by Section 40–3–13(A) from accessing community real property to satisfy a community debt in the event of default

6. The provision in the guaranty signed by Mr. Muzio stated in pertinent part that:

Any execution or other legal process that may issue [against the Guarantor] shall and may be satisfied from any separate property, community property, property held in joint tenancy, property held as tenants-in-common, or in any other manner ... in which any Guaran-

tor or his or her spouse have an interest, without regard to any priority or exemption. *Muzio*, 100 N.M. at 99, 666 P.2d at 778 (emphasis omitted). Without elaboration, we held that this clause violated New Mexico law. *Id.* (citing, *inter alia, Shadden*, 93 N.M. 274, 599 P.2d 1071).

on the obligation by the debtor spouse. Such an interpretation of Section 40–3–13(A) is clearly inconsistent with Section 40–3–9(B) and Section 40–3–11(A), which together provide, without qualification, that either spouse alone can create a community debt and that community debts are to be satisfied first from community property. We refuse to adopt Mrs. Sproul's suggested interpretation of Section 40–3–13(A) because it would require a reading of this statute that would be inconsistent with the clear language of Sections 40–3–9(B) and 40–3–11(A). *See Burroughs v. Board of County Comm'rs*, 88 N.M. 303, 306, 540 P.2d 233, 236 (1975) (An act "is to be read as a whole and each part construed in connection with every other part so as to produce a harmonious whole."); *State ex rel. Clinton Realty Co. v. Scarborough*, 78 N.M. 132, 135, 429 P.2d 330, 333 (1967) (holding that a court must reconcile different statutory provisions "so as to make them consistent, harmonious and sensible.").

Finally, New Mexico law grants creditors, such as the Bank in this case, an expectation that community debts may be satisfied from community real property. *See Shadden* at 281–82, 599 P.2d at 1078–79. Because one spouse alone can incur a community debt, *see* § 40–3–9(B), and community debts are first satisfied from all community property, *see* § 40–3–11(A), the Bank, when loaning money to Mr. Sproul, could reasonably expect that the Sprouls' community real property would be liable to satisfy the community debt in the event of default. We refuse to read nonexistent language into Section 40–3–13(A)—to require joinder of both spouses whenever a community debt might later be satisfied from community real property—when doing so would violate the Bank's reasonable

expectation under New Mexico law that the note signed by Mr. Sproul, if adjudged to constitute a community debt, could be satisfied from all of the Sprouls' community property. *See Burroughs*, 88 N.M. at 306, 540 P.2d at 236 (a court is prohibited from reading language into a statute that is not there).

For these reasons, we hold that Section 40–3–13(A) should not be construed to require both spouses to join in creating a community debt merely because a later judgment on the debt might encumber community real property.[7] We overrule *Shadden* and *Muzio* to the extent that they suggest otherwise. Consequently, the trial court did not err when it ordered the judicial sale of the Sprouls' residence to satisfy the Bank's judgment.

## B

■ We next address whether the district court erred by deciding that the Bank could foreclose upon the Sprouls' community real property when the Bank failed to join Mrs. Sproul in the underlying actions on the debt. Mrs. Sproul contends that her interest in the community real property should not be affected by the judgment against her husband because she was neither joined as a defendant in the Ohio proceeding nor in the first New Mexico proceeding to domesticate the Ohio judgment. Mrs. Sproul suggests that her due process rights were violated when the Bank waited until foreclosure of its judgment lien to name her as a defendant.

We find no principled reason to preclude the Bank from executing on the Sprouls' community real property to satisfy a community debt simply because it did not join Mrs. Sproul prior to foreclosure of its judg-

---

7. Statutes similar to Section 40–3–13(A) from every other community property jurisdiction all specifically require the joinder of both spouses before community real property is encumbered. *See* Ariz.Rev.Stat.Ann. § 25–214(C) (1991); Cal. Civ.Code § 5127 (West Cum.Supp. 1993); Idaho Code § 32–912 (Cum.Supp. 1993); La.Civ.Code Ann. art. 2347 (West 1985); Nev.Rev.Stat. § 123.230(3) (1991); Tex.Fam.Code Ann. § 5.81 (West 1993) (encumbrance of homestead); Wash.Rev.Code § 26.16.030(3) (1992). Our re-

search fails to disclose any cases from these jurisdictions holding that a judgment lien is void for encumbering community real property when one spouse alone creates a community debt. In at least one community property jurisdiction, encumbrances imposed by law, such as a judgment recorded against one spouse, are specifically exempted from the statutory joinder requirement. *See* La.Civ.Code Ann. art. 2347, cmt. a; *Rayne State Bank & Trust Co. v. Fruge*, 546 So.2d 637, 640 (La.Ct.App.1989).

ment lien against Mr. Sproul. The obvious purpose for joining Mrs. Sproul as a party would be to give her notice of proceedings that could potentially affect her interest in the community real property and to provide her an opportunity to argue that the debt should be considered her husband's separate obligation. *Cf. Vikse v. Johnson,* 137 Ariz. 528, 672 P.2d 193, 195 (finding that the purpose behind an Arizona statute that requires joinder of spouses in actions on community debts is to give each spouse notice of the proceedings and an opportunity to defend), *review denied* (Ct.App.1983).[8] Review of the record reveals that Mrs. Sproul received adequate notice and a sufficient opportunity to argue her case.

Mrs. Sproul was named as a defendant when the Bank filed its action to establish the judgment against Mr. Sproul as a community debt and to foreclose its judgment lien upon the couple's residence. After Mrs. Sproul was joined as a defendant, she submitted an answer to the Bank's complaint denying that the judgment was a community debt, participated in a nonjury trial before the district court, and submitted proposed findings of fact and conclusions of law to the court that vehemently asserted that the debt was Mr. Sproul's separate obligation. Under these facts, we find that Mrs. Sproul received adequate opportunity to argue her position despite the fact that she was not joined as a defendant in the Bank's lawsuit against Mr. Sproul in Ohio and its subsequent suit to domesticate the Ohio judgment in New Mexico. Furthermore, because Mrs. Sproul received notice of the lawsuit pending against her interest in the residence and availed herself of the opportunity to be heard, the requirements of due process were satisfied. *See Rayne State Bank,* 546 So.2d at 641–42 (finding that husband's due process rights were not violated by Bank that was executing a judgment against the couple's community real property, when the husband was served and

filed responsive pleadings). We hold that the district court did not err by ordering the judicial sale of the Sprouls' residence to satisfy the community debt even though the Bank did not join Mrs. Sproul as a party prior to the foreclosure proceedings.

■ In essence, Mrs. Sproul's argument that the Bank is precluded from foreclosing upon her interest in the community real property for failing to join her as a party prior to foreclosure raises the general question of whether the creditor of one spouse can wait until foreclosure or execution of a judgment to seek judicial resolution of whether the judgment constitutes a community debt. As noted by the Court of Appeals in *Naranjo v. Paull,* 111 N.M. 165, 177, 803 P.2d 254, 266 (Ct.App.1990), our courts have commonly permitted determination of whether a marital debt constitutes a community or separate obligation at the time "an attempt is made to execute on property for purposes of collecting a judgment." *See also Dell v. Heard,* 532 F.2d 1330, 1334 (10th Cir.1976) (recognizing that the issue of whether a tort judgment against one spouse constituted a community or separate debt could be determined when suit was brought to satisfy the judgment); *McDonald v. Senn,* 53 N.M. 198, 200–01, 204 P.2d 990, 990–91 (1949) (per curiam) (permitting the determination of whether a personal tort judgment against one spouse constituted a community or separate obligation to be made when suit was brought to foreclose on a judgment lien on community real estate); Reppy & Samuel, *supra,* at 265 (concluding that New Mexico requires tort and contract debts to be "classified as community or separate at the time the creditor seeks to be paid").

Nonetheless, our Court of Appeals, in *Naranjo,* questioned whether this Court's statement in *Muzio*—that under Section 40–3–13(A), "foreclosure on community real property based on a judgment entered solely against one spouse should not affect

8. Arizona requires by statute that both spouses be sued jointly in an action on a community debt, *see* Ariz.Rev.Stat.Ann. § 25–215(D) (1991), and has interpreted this statute to preclude subsequent satisfaction of a judgment from the community property when both spouses were

not joined as parties in the underlying judgment proceedings. *See Shumway,* 161 Ariz. at 34–37, 775 P.2d at 1098–1101; *Vikse,* 137 Ariz. at 529–31, 672 P.2d at 194–96. New Mexico, however, has no comparable statute.

the community interest of the other spouse," *Muzio*, 100 N.M. at 99, 666 P.2d at 778—could be interpreted as meaning that under certain circumstances "a creditor who waits until executing on a judgment may be barred from litigating whether a debt [is] a community debt." *Naranjo*, 111 N.M. at 178, 803 P.2d at 267. We need not decide today whether a creditor is prohibited from litigating the separate or community nature of a debt at the time of execution because in this case the Bank litigated the issue prior to execution, when seeking to foreclose upon its judgment lien. Nothing in Section 40-3-13(A), however, or related community property statutes, prohibits a creditor from adjudicating the issue of whether a debt is a separate or community debt at the time suit is brought to foreclose on a judgment lien. *But see* Ariz. Rev.Stat.Ann. § 25-215(D) (1991). Thus, we hold that the determination of whether a marital debt constitutes a separate or community debt can be made at the time that a creditor seeks to foreclose on its judgment lien, notwithstanding that the judgment was entered only against the debtor spouse. *Muzio* is overruled to the extent that it says otherwise. Accordingly, the district court did not err by determining that the judgment against Mr. Sproul constituted the Sprouls' community debt at the time the Bank sought to foreclose its judgment lien against the Sprouls' residence.

## V

■ Finally, we address whether the district court erred by misapplying principles of full faith and credit when it ordered that the Sprouls' residence be foreclosed upon and sold to satisfy the Bank's debt. Article IV, Section 1 of the United States Constitution states that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." The mandate of the Full Faith and Credit Clause is effectuated by 28 U.S.C. § 1738 (1988), which requires that properly authenticated acts, records, and judicial proceedings be given "the same full faith and credit in every court within the United States and its Territories and Possessions as they have by

law or usage in the courts of such State, Territory or Possession from which they are taken." Accordingly, a money judgment entered in a foreign state will be given the same effect in New Mexico as it would have been given in that foreign state. *See Reeve v. Jones*, 101 N.M. 320, 322, 681 P.2d 746, 748 (Ct.App.1984).

Mrs. Sproul argues that the district court, by ordering the judicial sale of the Sprouls' residence, gave greater effect to the Ohio judgment than the State of Ohio would have given the same judgment, because her interests in jointly held property would not be liable to satisfy a judgment entered solely against her husband in Ohio. We do not agree.

■ While the judgment of a foreign state will not be given greater effect in New Mexico than in the state where rendered, *see, e.g., In re Estate of Ikuta*, 64 Haw. 236, 639 P.2d 400, 404 (1981), the judgment, once converted into a New Mexico judgment, is entitled to the same enforcement procedures and remedies as a judgment originating in this state. *See City of Philadelphia*, 478 A.2d at 778 ("[L]ocal law may determine the scope and nature of available remedies."); Restatement (Second) of Conflict of Laws § 99 (1969) ("The local law of the forum determines the methods by which a judgment of another state is enforced."). The principles of full faith and credit are not violated simply because the New Mexico judgment has greater force as a remedy than the underlying judgment would have in Ohio. *See Weir v. Corbett*, 229 Cal.App.2d 290, 40 Cal.Rptr. 161, 163–64 (Ct.App.1964). We hold that the district court did not violate principles of full faith and credit when it ordered foreclosure and sale of the Sprouls' residence.

## VI

In conclusion, we hold that the Sprouls' community property, which necessarily includes Mrs. Sproul's community property interest in the residence, is available to satisfy a debt incurred solely by Mr.

Sproul. This result is mandated by New Mexico community property law.

In the instant case, both Mr. and Mrs. Sproul had a community interest in the funds acquired from the Bank loan and in the Blandford Park stock that Mr. Sproul purchased with the loan proceeds. *See* NMSA 1978, § 40–3–8(A) & (B) (Repl. Pamp.1989) (defining separate and community property). Similarly, the note executed between Mr. Sproul and the Bank gave rise to the presumption of a community debt. *See* Section 40–3–9(B); *Alarcon,* 112 N.M. at 422, 816 P.2d at 491; *Abraham,* 97 N.M. at 290, 639 P.2d at 577. The Bank obtained a judgment against Mr. Sproul after he defaulted on his obligation to repay the Bank note. The judgment, like the underlying debt, was presumptively a community debt. *See* Section 40–3–9(B); *cf. Mountain v. Price,* 20 Wash.2d 129, 146 P.2d 327, 328 (1944) (noting that under Washington's community property law, a judgment rendered against a married man is presumed to be a community obligation).

As is permitted by New Mexico law, Mrs. Sproul appeared before the district court at the time the Bank sought foreclosure of its judgment lien and attempted to overcome the presumption that the judgment was a community obligation. *See McDonald,* 53 N.M. at 200–01, 204 P.2d at 990–91; *Naranjo,* 111 N.M. at 177, 803 P.2d at 266; *Dell,* 532 F.2d at 1334; *cf. Mountain,* 146 P.2d at 328 (noting the existence of the same procedural process in Washington). The district court correctly concluded, however, that the judgment was a community debt of the Sprouls. Because the judgment constitutes a community debt, the Bank, a foreign creditor, has the same right to satisfy its judgment from the Sprouls' community property as a creditor from New Mexico executing on a similar judgment originally rendered in this state. *See Escrow Serv. Co. v. Cressler,* 59 Wash.2d 38, 365 P.2d 760, 766 (1961) (en banc) (Finley, C.J., dissenting) (noting that a creditor on a foreign contract should have access to community property to satisfy a community debt to the same extent as creditors to contracts executed in state). Accordingly, the judgment and order of the district court is AFFIRMED.

IT IS SO ORDERED.

MONTGOMERY and FRANCHINI, JJ., concur.