985 P.2d 590

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff–Appellant,**

v.

**Charles GREENE, Defendant–Appellee.**

**No. 1 CA–CV 98–0051.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 26, 1999.

Review Denied Sept. 21, 1999.

Turley, Swan & Childers, P.C. by Christopher J. Bork, Phoenix, Attorneys for Plaintiff–Appellant.

David Wm. Engelman, P.C. by David Wm. Engelman, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

WEISBERG, Presiding Judge.

¶ 1   May a creditor with a valid judgment against one spouse from a non-community property state satisfy that judgment from the community property of both spouses when they move to Arizona after entry of the judgment?   Applying the Full Faith and Credit Clause of the United States Constitution, we hold that a creditor may, and accordingly reverse the superior court's order quashing the writs of garnishment in this case.

## FACTS AND PROCEDURAL HISTORY

¶ 2   The defendant, Charles Greene ("Charles") and his wife ("Agnes") have been married since 1968.   In 1983, Charles invested in a limited partnership whose principal asset was real estate located in Cincinnati, Ohio.   The general partner was located in Dallas, Texas.   Charles's capital contribution was to be $78,125.   He paid $6,125 in cash and signed a promissory note for the remaining $72,000.   The note provided that it was to "be governed by the laws of the State of New York."   At the time Charles signed the note, both he and Agnes were Texas residents.

¶ 3   National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), guaranteed Charles's payment of the note.   When Charles defaulted on the note, National Union made payment under the bond.   It then filed suit against Charles in New York in 1987.   Charles failed to appear, and a default judgment in the amount of $24,943.58 was entered against him on March 8, 1988.

¶ 4   When the suit was filed, Charles was working and living in Pittsburgh, but he maintained his Texas residence.   Agnes was also a Texas resident at that time.   Agnes was not served, did not become a party to the suit, and was not named in the judgment.   Charles subsequently moved to Arizona in March 1993; Agnes joined him in Arizona in April 1997.

¶ 5 As of August 15, 1997, the outstanding amount of the judgment was $46,131.87. On August 18, 1997, National Union domesticated the New York judgment in Arizona pursuant to the Revised Uniform Enforcement of Foreign Judgments Act, Arizona Revised Statutes Annotated ("A.R.S.") sections 12–1701 to 12–1708. National Union next obtained writs of garnishment against Charles's employer and the Wells Fargo Bank into which Charles had deposited his wages.

¶ 6 In September 1997, "[t]he community of Charles E. Greene and Agnes Greene . . . and each of them individually" moved to quash the writs of garnishment. Following briefing and oral argument, the court granted the motion. After entry of a formal order quashing the writs of garnishment, National Union filed this appeal. We have jurisdiction under A.R.S. section 12–2101(F)(3), which allows an appeal from an order "[d]issolving or refusing to dissolve an execution or garnishment."

## DISCUSSION

¶ 7 Arizona law provides that "[t]he community property is liable for a spouse's debts incurred outside of this state during the marriage which would have been community debts if incurred in this state." A.R.S. § 25–215(C). The Greenes agree that, had Charles incurred the underlying debt in Arizona, it would have been a community obligation and their community property would be liable for it.[1]

### A. *Arizona Joinder Law Cannot Be Imposed on a New York Judgment*

¶ 8 The Greenes argue that National Union may not enforce the judgment against their community property because it did not join Agnes in the New York suit. They maintain that, under A.R.S. section 25–215(D),[2] community property cannot be liable for a judgment unless both spouses are joined in the underlying suit. National Union responds that it could not have joined Agnes in the suit under New York law, a point the Greenes concede. It asserts that the New York judgment is valid and that the Arizona courts must honor it under the Full Faith and Credit Clause of the Constitution of the United States, Article IV, section 1. *See Oyakawa v. Gillett,* 175 Ariz. 226, 854 P.2d 1212 (App.1993).

¶ 9 We agree with National Union that its failure to comply with A.R.S. section 25–215(D) in the New York law suit is not a proper ground to refuse to honor the New York judgment. Under full faith and credit, a foreign judgment may not be attacked on the basis that it does not comply with the law of the state in which the judgment creditor seeks to enforce it. *Oyakawa,* 175 Ariz. at 231, 854 P.2d at 1217.

> [T]he judgment of a state court should have the same credit, validity, and effect, in every other court in the United States, which it had in the state where it was pronounced, and . . . whatever pleas would be good to a suit thereon in such state, *and none others,* could be pleaded in any other court in the United States.

*Id.* at 231–32, 854 P.2d at 1217–18 (*quoting Stephens v. Thomasson,* 63 Ariz. 187, 194, 160 P.2d 338, 341 (1945), and *Williams v. North Carolina,* 317 U.S. 287, 293–94, 63 S.Ct. 207, 87 L.Ed. 279 (1942)). When the suit was filed, this case had no connection with Arizona, and a New York court would not refuse to recognize the judgment just because National Union did not comply with Arizona law. Therefore, under full faith and

---

1. The parties engage in a discussion over which state's laws apply to the underlying debt, New York, Texas, or Pennsylvania. National Union argues most strongly that New York law applies, and the Greenes agree. However, we need not decide this question because our holding renders it irrelevant. Under section 25–215(C), the treatment is the same no matter which other state's laws apply: if the debt would have been a community liability if incurred in Arizona, it is treated as such.

2. "Except as prohibited in § 25–214, either spouse may contract debts and otherwise act for the benefit of the community. In an action on such a debt or obligation the spouses shall be sued jointly and the debt or obligation shall be satisfied: first, from the community property, and second, from the separate property of the spouse contracting the debt or obligation."

credit, Arizona courts must give it the same recognition.

¶ 10 The Greenes nevertheless attempt to distinguish this case from *Oyakawa*. They argue that under *Oyakawa* the enforcing court in Arizona must determine which state's laws govern the underlying judgment and apply those laws to determine the validity of the judgment creditor's attempt to satisfy the judgment from the assets of an unnamed spouse. But this argument begs the question: community property is foreign to New York law, which therefore does not provide for attaching community assets.

■ ¶ 11 Moreover, the Greenes' argument misinterprets *Oyakawa*. In *Oyakawa* we *rejected* the appellants' argument that Arizona could refuse to enforce a California judgment against the community where the plaintiffs had not complied with Arizona law in the California suit because doing so would violate full faith and credit. 175 Ariz. at 231–32, 854 P.2d at 1217–18. Similarly, the superior court here could not refuse to recognize the New York judgment on the ground that National Union did not comply with the joinder requirement of A.R.S. section 25–215(D) in the New York court. An Arizona court may not impress Arizona procedural law upon a foreign judgment and refuse to recognize that judgment merely because Arizona law was not followed in obtaining it. *See* Chester James Antieau and William J. Rich, 3 *Modern Constitutional Law* § 43.57, at 126 (1997) ("a state cannot refuse to enforce a judgment on grounds that a statute of limitations had run by its laws even though the judgment was lawfully obtained by virtue of a longer statute of limitations in the rendering state"). Consequently, the New York judgment is valid and Arizona courts must recognize it.

■ ¶ 12 The Greenes' argument is based on a misunderstanding of full faith and credit. Recognizing a foreign judgment and enforcing it are two different concepts:

A foreign judgment is recognized ... when it is given the same effect that it has in the state where it was rendered with respect to the parties, the subject matter of the action and the issues involved. A foreign judgment is enforced when, in addition to being recognized, a party is given the affirmative relief to which the judgment entitles him.

*Sainz v. Sainz*, 36 N.C.App. 744, 245 S.E.2d 372, 375 (1978) (*quoting* Restatement (Second) of Conflict of Laws, § 93, Introductory Note (1971)). The Full Faith and Credit Clause does not make the laws of the rendering state applicable in enforcing the judgment: "The methods by which a judgment of another state is enforced are determined by the local law of the forum." *Id.* In *Sainz*, the North Carolina Supreme Court refused to enforce that portion of a New York decree ordering the husband to specifically perform the payment of child support because the North Carolina constitution forbids imprisonment for debt. *See also Huntington Nat'l Bank v. Sproul*, 116 N.M. 254, 861 P.2d 935, 947 (1993) (a judgment domesticated in New Mexico "is entitled to the same procedures and remedies as a judgment originating in this state"). Thus, in enforcing the New York judgment, we look to the laws of Arizona and hold that section 25–215(C) makes the community property liable for the judgment because the underlying debt would have been a community obligation if incurred in Arizona.

**B. *Due Process Does Not Require Joining Both Spouses for a Judgment against the Marital Community***

■ ¶ 13 The Greenes also argue that, as a matter of due process, a plaintiff must join both spouses in the foreign jurisdiction in order to obtain a valid judgment against the marital community in Arizona. They cite *Eng v. Stein*, 123 Ariz. 343, 599 P.2d 796 (1979), and *Vikse v. Johnson*, 137 Ariz. 528, 672 P.2d 193 (App.1983). They point out that, under the Full Faith and Credit Clause, Arizona need not enforce a sister state's judgment if the defendant's due process rights were violated. *Oyakawa*, 175 Ariz. at 228, 854 P.2d at 1214; *Cho v. American Bonding Co.*, 190 Ariz. 593, 599, 951 P.2d 468, 474 (App.1997). But we conclude that due process does not necessarily require joining both spouses to obtain a valid judgment against the marital community; and that *Eng* does not hold to the contrary.

¶ 14  In *Eng*, the trial court entered judgment against both the husband and wife individually and against the marital community, despite the plaintiffs having sued only the husband.  The supreme court invalidated the judgment to the extent it purported to bind the wife and the marital community.  But the *Eng* court relied on due process only to invalidate the judgment against the wife individually; it invalidated the judgment against the community based solely on A.R.S. section 25–215(D):

> The contract which forms the basis of this action is presumably a community obligation.  A.R.S. § 25–215 requires that a cause of action based upon such a community obligation be brought against both the husband and wife.
>
> . . . .
>
> Prior to the enactment of A.R.S. § 25–215, the rule regarding the necessity of joining a wife as a party-defendant in an action to enforce a community obligation was based on the notion that a wife had no power to bind the community by contract.  But even the law in effect at that time recognized that a wife's separate property was not liable for debts and obligations of the husband.  Nevertheless, the trial court entered judgment against appellant's wife, who was never named as a party to the action nor served with process.  "That an in personam judgment may not be rendered against one who has never been a party to the litigation would seem so obvious that citation of authority should be unnecessary."  *King v. Uhlmann*, 103 Ariz. 136, 156, 437 P.2d 928, 948 (1968) (Struckmeyer, J., dissenting).
>
> The trial court's judgment is void insofar as it attempts to bind Mrs. Eng or the Eng community.

123 Ariz. at 345–46, 599 P.2d at 798–99 (citations omitted).  While *Eng* holds that due process requires that an individual must be joined in the suit to obtain a valid judgment against her, it does not hold that the same is true for the marital community.  *Eng*, therefore, is not controlling here.

¶ 15  We also reject the Greenes' contention that *Vikse v. Johnson* requires joinder here.  In *Vikse*, Division Two of this court held that a Minnesota judgment against Arizona defendants could not be enforced against Arizona community property because the plaintiffs had failed to join the defendants' wives, as required by A.R.S. section 25–215(D).  Relying on *Eng*, the court held that joinder of both spouses was necessary to obtain jurisdiction over the marital community:

> The reason for the statutory provision making the community liable for community obligations incurred outside the state is to protect the rights of those creditors regardless of the fact that the obligation was not incurred in Arizona.  In order to have the advantage of this provision, however, the creditor must join both spouses and thereby have personal jurisdiction over the community.

*Vikse*, 137 Ariz. at 530, 672 P.2d at 195.  Without discussing whether Arizona law applied in the Minnesota suit, the court rejected the plaintiffs' argument that requiring joinder violated full faith and credit:

> [W]e do not agree that requiring the joinder of a spouse in order to bind the community violates the full faith and credit clause, U.S. Const. art. IV, Sec. 1.  All that needed to be done here, assuming community liability, was to join both spouses in the Minnesota lawsuit.

137 Ariz. at 531, 672 P.2d at 196.  Division Two of this court later applied *Vikse* to preclude a creditor with a New Hampshire judgment against the husband from executing on Arizona community property.  *C & J Travel, Inc. v. Shumway*, 161 Ariz. 33, 775 P.2d 1097 (App.1989).  Again, without determining what law applied in the New Hampshire suit, the court noted that "[n]o procedural impediment prevented the creditors from joining" the wife, 161 Ariz. at 36, 775 P.2d at 1100, and held that the judgment could not be satisfied from community property.

¶ 16  Unlike *Vikse*, the New York action in this case was filed at a time when Arizona had absolutely no connection with this suit.  Furthermore, as the Greenes concede, there was a procedural impediment to joining Agnes in the suit:  New York law did not allow it.  The Greenes also acknowledge

that, if Charles were working in New York (or any other non-community property state that did not recognize one spouse's property interest in the other spouse's earnings), National could garnish both his wages and the bank account into which he deposited them. Nevertheless, they assert that, because Arizona gave Agnes a property interest in those properties, National Union could not do so once the Greenes moved to Arizona. We disagree.

¶ 17 *Oyakawa* holds that an Arizona court may not refuse to recognize another state's judgment simply because the plaintiff did not there comply with Arizona's joinder requirement. 175 Ariz. at 229, 854 P.2d at 1215. The reasoning of *Oyakawa* is bolstered by the facts of this case: National Union could not possibly have known that the Greenes would move to Arizona years after the New York suit was completed, and we will not require a creditor to do the impossible. *Heinig v. Hudman*, 177 Ariz. 66, 71 n. 3, 865 P.2d 110, 115 n. 3 (App.1993) (res judicata did not bar plaintiff from filing a new action against the marital community when wife could not be joined in the original arbitration proceeding); *cf. Northwestern Nat'l Ins. Co. v. Schubach*, 93 F.3d 386 (7th Cir.1996) (in action where parties agreed that Arizona law applied, creditor brought suit in federal court in Wisconsin against Arizona defendant, choosing not to name wife; court held that creditor could not later bring suit naming both spouses to impose judgment on marital community).

¶ 18 We live in a mobile society: it is commonplace for people to move from state to state as they pursue job opportunities and better living conditions. Inevitably, some judgment-debtors in non-community property states will move to Arizona, where community property is the law. It would be asking too much to require the creditor to foresee such a move, and to comply with Arizona laws at the time it files the original suit. Full faith and credit precludes that.

¶ 19 With the enactment of A.R.S. section 25–215(C), the legislature gave practical effect to the Full Faith and Credit Clause and specifically decided that our community property laws may not be used to make Arizona a

haven for debtors from non-community property states. The trial court's order, however, would emasculate section 25–215(C), and its practical effect would be to require creditors in all states to comply with Arizona procedural law because their debtors might at some time move here. We, therefore, decline to so hold.

**C. Due Process Requires Notice Before the Judgment may be Satisfied from Community Property**

¶ 20 Nevertheless, due process is implicated here. Each spouse has an equal interest in the community property. *Garn v. Garn*, 155 Ariz. 156, 159, 745 P.2d 604, 607 (App.1987). Neither may be deprived of that interest without due process of law. U.S. Const., Amends. V, XIV; Ariz. Const., art. 2, § 4. Agnes must be given "the opportunity to be heard at a meaningful time and in a meaningful manner" before she can be deprived of her interest in the community property. *See Huck v. Haralambie*, 122 Ariz. 63, 65, 593 P.2d 286, 288 (1979); *see also Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Neither the time nor manner were "meaningful" when the suit was brought in New York because there was no threat to her property then. The time became meaningful, however, when the writs of garnishment were issued in Arizona.

¶ 21 Under these circumstances, we find guidance in *Huntington*. In that case, the husband and wife were New Mexico residents. The husband had unilaterally incurred a debt to a bank in Ohio. 861 P.2d at 937. After he defaulted on the note, the bank sued him alone in Ohio and obtained a judgment, which it domesticated in New Mexico in an action solely against him. *Id.* The bank later brought an action to foreclose the judgment lien on the couple's residence, this time naming both the husband and wife. *Id.* Not unlike this case, the wife in *Huntington* contended that her interest in the community real property should not be affected by the judgment against her husband because she was joined neither as a defendant in the Ohio proceeding nor in the first New Mexico proceeding to domesticate the Ohio judgment. *Id.* at 945. Both spouses ap-

peared and, after trial, the court ordered foreclosure, rejecting their contention that the debt was not a community obligation. *Id.* at 937, 946.

¶ 22 The New Mexico Supreme Court subsequently rejected the wife's argument that her due process rights were violated because she had not been joined prior to the foreclosure action. The court noted that "the obvious purpose for joining [the wife] as a party would be to give her notice of proceedings that could potentially affect her interest in the community real property and to provide her an opportunity to argue that the debt should be considered her husband's separate obligation." *Id.* at 946. It then found that, because the wife had been joined as a defendant in the bank's action to establish the judgment against husband as a community debt and foreclose on the couple's residence, and because she filed an answer and participated in the trial before the district court, she had "received adequate opportunity to argue her position," despite the fact that she had not been joined as a defendant in the bank's prior actions in Ohio and New Mexico. *Id.; see also CBM of Arizona, Inc. v. Sevier,* 184 Ariz. 503, 910 P.2d 654 (App. 1996) (premarital judgment against wife was enforceable against community property; husband's due process rights were met when he received notice of garnishment of wife's wages for premarital judgment on wife's separate debt).

¶ 23 We consider the reasoning of *Huntington Nat'l Bank* to be appropriate here. The purpose of joining Agnes is to provide her with the opportunity to defend her interests in the community's property and to argue that the debt should be Charles's separate obligation. It is evident that Agnes received notice of the writs of garnishment here because she joined Charles in moving to quash. Her appearance and participation therefore waived any defense of lack of notice. *See Seven Springs Ranch, Inc. v. State,* 156 Ariz. 471, 474, 753 P.2d 161, 164 (App.1987). Like the wife in *Huntington Nat'l Bank,* Agnes had the opportunity to raise whatever defense she had against enforcing the judgment against her interest in the community property. Her due process rights, therefore, have not been violated.

**D. Attorneys' Fees**

¶ 24 Both parties request attorneys' fees on appeal pursuant to A.R.S. section 12–341.01(A) and agree that this is an action "arising out of contract." *See United Bank of Arizona v. Sun Valley Door,* 149 Ariz. 64, 69, 716 P.2d 433, 438 (App.1986)(action to enforce promissory note and foreclose on deed of trust is an action arising out of contract when contract was a factor in causing the dispute). National Union, as the successful party in this action, may recover its attorneys' fees on appeal by complying with Rule 21 of the Arizona Rules of Civil Appellate Procedure and our decision in *Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 188, 673 P.2d 927, 932 (App. 1983).

**CONCLUSION**

¶ 25 Because Agnes Greene received notice of the garnishments and acted to protect her interests, her due process rights are not violated by making the community property liable for the judgment.

¶ 26 The order quashing the writs of garnishment is reversed.

CONCURRING: THOMAS C. KLEINSCHMIDT, Judge, REBECCA WHITE BERCH, Judge.