30 P.3d 121

The **ALBERTA SECURITIES COMMIS-SION, a Commission of the Province of Alberta, Canada, Plaintiff–Appellee,**

v.

**Lawrence G. RYCKMAN and Elaine Ryckman, husband and wife, Defendants–Appellants.**

**No. 1 CA–CV 00–0440.**

Court of Appeals of Arizona,
Division 1, Department A.

Aug. 7, 2001.

Spiess & Short, P.C. by G. Peter Spiess and D. Michelle Douglas, Phoenix, Attorneys for Defendants–Appellants.

The Cavanagh Law Firm, P.A. by Henry L. Timmerman and Bradley J. Johnston and Christopher Robbins, Phoenix, Attorneys for Plaintiff–Appellee.

## OPINION

BERCH, Judge.

¶ 1 Lawrence and Elaine Ryckman appeal from a summary judgment that domesticated a money judgment for investigation expenses entered in the Court of Queen's Bench of the Province of Alberta, Canada, in favor of the Alberta Securities Commission ("ASC"). The Ryckmans present these issues:

1. Whether the trial court erred in granting summary judgment because triable fact issues underlay the question whether the Ryckmans had been denied basic due process rights;

2. Whether the trial court abused its discretion in failing to grant the Ryckmans a

150–day delay in the summary judgment proceedings; and

3. Whether the trial court erred in entering a judgment that was enforceable against Elaine Ryckman's separate property and her share of the Ryckmans' community property.

## RELEVANT FACTS AND PROCEDURE

¶ 2 Until January 1997, the Ryckmans were full-time residents of Canada. In January 1997, they established a residence in Scottsdale, Arizona.

¶ 3 In 1995, Lawrence Ryckman was alleged to have manipulated the Alberta securities markets by purchasing and selling publicly traded shares of Westgroup Corporation to artificially boost their prices. ASC investigated these allegations. In May 1995, ASC issued a notice of hearing alleging that Ryckman had committed various violations of the Alberta Securities Act. ASC did not allege that Elaine Ryckman was involved.

¶ 4 Ryckman appeared before ASC on the initial return date of May 25, 1995 and at several case management meetings and other pre-hearing proceedings. ASC provided documents to Ryckman in August 1995 and a list of witnesses and exhibits in November 1995. At a hearing on the charges against Ryckman in January 1996, the ASC hearing panel received testimony and documentary evidence. Ryckman appeared periodically at the hearing through counsel and twice appeared personally.

¶ 5 The hearing panel issued its administrative ruling, finding that Ryckman had engaged in market manipulation, but rejecting other allegations as unproven. ASC's ruling required Ryckman to resign all positions as officer or director of any securities issuer, prohibited him from acting in any such capacity for eighteen years, and required him to cease trading in securities for eighteen years.

¶ 6 ASC filed with the Alberta court a certified order assessing investigative costs of $492,640.14 Can. against Ryckman. This order has the same force and effect as a judgment of the Court of Queen's Bench. Alberta Securities Act § 167.1(5).

¶ 7 One week after filing a notice of appeal to the Alberta Court of Appeal, Ryckman entered a settlement with ASC under which ASC would accept $250,000.00 Can. as full payment for investigative costs, provided Ryckman paid that sum no later than May 16, 1996. On that same day, Ryckman filed a "Notice of Discontinuance of Appeal" with the Alberta Court of Appeal.

¶ 8 Ryckman paid nothing toward the $250,000.00 Can. settlement by May 16, 1996. He paid a total of $7,500.00 Can. later in 1996, and nothing thereafter.

¶ 9 ASC brought this action in Maricopa County Superior Court in March 1999, seeking an Arizona judgment against the Ryckmans on the judgment of the Court of Queen's Bench of Alberta. The trial court granted ASC's motion for summary judgment and denied the Ryckmans' motion for reconsideration. From formal judgment, the Ryckmans timely appeal.

## ANALYSIS

### A. Standard of Review

¶ 10 We review matters of law and mixed questions of law and fact de novo. *In re United States Currency in the Amount of $26,980.00,* 193 Ariz. 427, 429, ¶ 5, 973 P.2d 1184, 1186 (App.1998). Summary judgment should be affirmed if the evidence presented by the party opposing the motion has so little probative value that reasonable people could not find in that party's favor. *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

¶ 11 Whether to grant a continuance to allow additional discovery is within the trial court's discretion. *See* Ariz. R. Civ. P. 56(f); *Birth Hope Adoption Agency, Inc. v. Doe,* 190 Ariz. 285, 287–88, 947 P.2d 859, 861–62 (App.1997). We will not reverse the court's determination absent an abuse of discretion. *Birth Hope,* 190 Ariz. at 287, 947 P.2d at 861. A trial court does not abuse its discretion in denying relief under Rule 56(f) when the evidence that the moving party proposes to discover is immaterial to the issues before the court. *See id.* at 288, 947 P.2d at 862.

### B. Recognition of Judgment of Court of Queen's Bench

¶ 12 In the trial court, the Ryckmans opposed recognition of ASC's Canadian judgment based primarily on Lawrence Ryckman's allegations that the Canadian proceedings were unfair and fraught with fraud and prejudice. Ryckman's affidavit alleged the following:

- that ASC's investigation was instigated by powerful government officials in retaliation for Ryckman's complaints about the Province's failure to meet funding commitments to the Calgary Stampeders Football Club, which Ryckman owned;
- that ASC refused to turn over relevant documents to Ryckman during its investigation;
- that during the weeks preceding the ASC hearing set for January 8, 1996, ASC engaged in settlement negotiations with Ryckman, drafted a settlement agreement, and led Ryckman and his attorney to believe that a settlement had been reached and no hearing would be needed, only to withdraw from the settlement negotiations on January 7, 1996, and insist that the hearing go forward, denying all later requests for postponement;
- that ASC's hearing attorney and two of the three members of the hearing panel had serious conflicts of interest;
- that in 1998 Ryckman learned "from a senior investigator with the ASC, who was involved in [the] investigation" that a member of the ASC Hearing Panel had insisted he be on the panel to ensure an outcome against Ryckman, had actively participated in the investigation, and had coached ASC's expert witness on the content of his testimony; and
- that after Ryckman filed his notice of appeal, the Alberta Treasury Branch

("ATB") induced him to withdraw his appeal by telling him that if he settled with ASC, dismissed his appeal, and signed a consent to receivership, ATB would forbear until March 6, 1996 filing involuntary receivership and bankruptcy proceedings against Ryckman Financial Corporation ("RFC") and seizing its files and records; and despite its assurances thereafter seized 165 boxes of files from Ryckman and RFC "in 1996."

¶ 13 Ryckman contends that the trial court erred in determining that principles of comity required recognition of the Canadian judgment. Ryckman cites the decision of this court in *Rotary Club of Tucson v. Chaprales Ramos de Pena*, 160 Ariz. 362, 364, 773 P.2d 467, 469 (App.1989), for the proposition that a foreign nation's judgment need be recognized only if it resulted from a full and fair trial before an impartial tribunal, and will not be recognized if it results from prejudice, fraud, unfairness, or irregularities in the foreign proceedings. Ryckman urges that the facts he presented through his affidavit in the trial court clearly established that the Canadian legal process in his case was plagued with prejudice, unfairness, and irregularities that denied him even a modicum of due process. Ryckman also contends that his failure to pursue his direct appeal to the Alberta Court of Appeal is irrelevant to whether the Arizona courts should recognize the Alberta judgment.

¶ 14 We do not agree with Ryckman's analysis. In *Rotary Club* the court declined to recognize a Mexican judgment that was procured through service of process on a Mexican attorney whom the Rotary Club had not authorized to accept service of process on its behalf. We do not view that court's quotation from *Restatement (Second) of Conflict of Laws* § 98 cmt. c (1971),[1] as Ryckman does,

---

1. In the 1971 *Restatement*, comment *c* to section 98 stated as follows: "A valid judgment rendered in a foreign nation after a fair trial in a contested proceeding will be recognized in the United States so far as the immediate parties and the underlying cause of action are concerned." The 1989 version remains the same, except that "claim" has been substituted for "cause of action." Former comment *c* (now comment *d* ) to section 98 states as follows:

*Conditions to recognition.* A foreign nation['s] judgment will not be recognized in the United States unless the American court is convinced that the foreign court had jurisdiction and that

"There has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary

as requiring that Arizona courts must review the proceedings that resulted in a foreign judgment and must decline to recognize the judgment upon the merest suggestion of prejudice or fraud.

■ ·¶ 15 Although we respect the general principle that *Restatement (Second) of Conflict of Laws* § 98 announces, we believe that the more specialized treatment of common law principles affecting recognition of foreign judgments presented in *Restatement (Third) of the Foreign Relations Laws of the United States* (hereinafter "*Restatement*") §§ 481 and 482 (1987) provides a more complete and useful framework for analyzing this appeal. *Restatement* § 481, entitled "Recognition and Enforcement of Foreign Judgments," creates a strong presumption of the validity of a foreign judgment:

> (1) Except as provided in § 482, a final judgment of a court of a foreign state granting or denying recovery of a sum of money ... is conclusive between the parties, and is entitled to recognition in courts in the United States.

■ ¶ 16 The judgment of the Alberta Court of Queen's Bench was a "final judgment" of that court within the meaning of *Restatement* § 481. Although Ryckman did appeal from the underlying administrative ruling, he later dismissed his appeal and has not commenced a collateral attack on the judgment in Alberta. Accordingly, under *Restatement* § 481, ASC's Canadian judgment is a final judgment presumptively entitled to recognition in the courts of Arizona unless one of the exceptions in § 482 requires or permits the court to decline to recognize it.

¶ 17 *Restatement* § 482 creates exceptions to this presumption that a final judgment is entitled to recognition:

> (1) A court in the United States may not recognize a judgment of the court of a foreign state if:

(a) the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with due process of law;

. . . .

(2) A court in the United States need not recognize a judgment of the court of a foreign state if:

. . . .

(b) the defendant did not receive notice of the proceedings in sufficient time to enable him to defend;

(c) the judgment was obtained by fraud;

(d) the cause of action on which the judgment was based, or the judgment itself, is repugnant to the public policy of the United States or of the State where recognition is sought. . . .

■ ¶ 18 Canadian judgments have long been viewed as cognizable in courts of the United States. *Roy v. Buckley*, 698 A.2d 497, 501–02, ¶ 11 (Me.1997); *Petition of Breau*, 132 N.H. 351, 565 A.2d 1044, 1049–50 (1989) (Souter, J., writing for the Supreme Court of New Hampshire). The relevant inquiry is whether the foreign jurisdiction that rendered the judgment in question, here the Province of Alberta, afforded the defendant an opportunity for a hearing that comports with basic due process principles before a court of competent jurisdiction. *See Roy*, 698 A.2d at 502, ¶ 12. Neither Ryckman's allegations concerning the ASC administrative proceedings nor anything else he presents tends to establish that the judicial system of Alberta is one that "does not provide impartial tribunals or procedures compatible with due process of law" within the meaning of § 482(1)(a).

■ ¶ 19 We also reject Ryckman's argument that his failure to prosecute his appeal to the Alberta Court of Appeal is immaterial to whether the Arizona courts should recognize ASC's Canadian judgment. Both in the trial court and on appeal, Ryckman has of-

appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it is sitting, or fraud in procuring

the judgment. . . ." *Hilton v. Guyot*, 150[159] U.S. 113, 202[, 16 S.Ct. 139, 40 L.Ed. 95] (1895).

If these conditions are met, the judgment will not be refused recognition on the ground that the rendering court made an error of law or of fact.

fered only the following rationale for dismissing his appeal: "I held out little hope for the Appeal, since I had previously been advised by my attorney that the likely result was a remand back to the Hearing Panel, where the same bias would be experienced, but in a less obvious manner with the same foregone result." Simply alleging that an act might be futile, however, does not excuse the obligation to try to exhaust one's remedies. *Phoenix Children's Hosp. v. Ariz. Health Care Cost Containment Sys. Admin.,* 195 Ariz. 277, 282, ¶ 19, 987 P.2d 763, 768 (App. 1999); *Smith v. Am. Express Travel Related Servs.,* 179 Ariz. 131, 139, 876 P.2d 1166, 1174 (App.1994).

¶ 20 The Alberta Court of Appeal has the following powers on appeal from a ruling of the ASC:

> (6) The Court of Appeal may:
> 
> (a) confirm, vary or reject the decision of the Commission,
> 
> (b) direct the Commission to re-hear the matter, or
> 
> (c) make any decision that the Commission could have made and substitute its decision for that of the Commission.

Alberta Securities Act § 26. Ryckman has supplied us with no evidence and no authority—Canadian or otherwise—suggesting that, given its broad statutory powers, the Alberta Court of Appeal would have been unable or unwilling to afford him a fair hearing of his appeal, or that the court could not have provided adequate relief in the event it accepted Ryckman's arguments concerning the circumstances surrounding the ASC hearing. Ryckman's hearsay account of a Canadian legal practitioner's speculation about the likely result of an appeal to the Alberta Court of Appeal is not sufficient to require the Arizona courts to decline to recognize ASC's Canadian judgment. *Cf. Regierungspraesident Land Nordrhein Westfalen v. Rosenthal,* 17 A.D.2d 145, 232 N.Y.S.2d 963, 967 (1962) (recognizing West German administrative revocation of alleged Nazi victim's resti-

tution award in part on ground that alleged victim had had six months to contest administrative action in West German court but failed to do so).

¶ 21 As noted above, Ryckman also asserted in the trial court that he had dismissed his appeal as part of a settlement with ASC procured by the Alberta Treasury Branch. Ryckman claims that ATB later failed to honor the agreement: "[A]lmost as soon as Ryckman had signed the agreement and dismissed his appeal, the Alberta Treasury Branch forced RFC into receivership, thus tying Ryckman's hands financially and making it impossible for him to pay the money required under his settlement with the ASC."

¶ 22 Proof of extrinsic fraud permits a court in the United States to decline to recognize a foreign judgment. *Restatement* § 482(2)(c) and cmt *e; see, e.g., Tamimi v. Tamimi,* 38 A.D.2d 197, 328 N.Y.S.2d 477, 479–84 (1972). Here, however, the specific averments in Ryckman's affidavit were insufficient even to raise a triable issue of fact supporting his claim that the Treasury Branch fraudulently breached the settlement agreement. Contrary to the implication of the Ryckmans' argument in this court, Ryckman's affidavit did not aver that ATB violated its alleged pre-settlement commitment by failing to wait until March 6, 1996 to commence involuntary receivership and bankruptcy proceedings against Ryckman Financial Corporation. Ryckman averred only that ATB did so in "1996." Further, Ryckman presented nothing more than innuendo [2] to support his implicit claim that ASC intentionally used ATB to trick Ryckman into giving up his appeal. No reason for declining to recognize ASC's Canadian judgment for extrinsic fraud or other cognizable ground appears from this record.

## C. *Ryckman's Rule 56(f) Affidavit*

¶ 23 Ryckman argues further that the trial court abused its discretion in not granting his request to postpone consider-

---

**2.** *Ryckman's affidavit asserts that the Alberta Provincial Treasurer oversaw both ASC and ATB at the time of these events and that ATB was ASC's "sister agency." Nonetheless, he has not*

alleged that the agencies acted in concert to defraud him, and he has not included evidence to support the bare allegations he has made.

ation of ASC's summary judgment motion to allow additional time for discovery. We do not agree.

¶ 24 Ryckman's Rule 56(f) affidavit, which he filed with his request for additional time to conduct discovery, stated that in the proceedings before the ASC Hearing Panel, ASC listed documents that it declined to produce, claiming that they were relevant but privileged. Ryckman demanded that ASC produce these documents in his superior court action as part of ASC's disclosure obligations, *see* Ariz. R. Civ. P. 26.1, but ASC declined to do so. Ryckman's affidavit also pointed out that his motion to compel production of these documents was still pending at that time. Ryckman averred:

11. The documents are central to the defense to be raised by my wife, Elaine Ryckman[,] and I[sic]. As stated in my Affidavit of even date herewith submitted with my Response to the Commission's Motion for Summary Judgment ..., I learned in mid–1998 of the existence of numerous facts pointing not only to prejudice on the part of William Hess as the chair of the Hearing Panel, which presided over the Proceedings, but also prejudice on the part of Charles Blakey, who headed up the investigation, as well as improper governmental interference by Jim Dinning, the official presiding over both the Alberta Treasury Branch, and others, with whom I was in a dispute, and the Commission, as well as, among other things, the fact that Mr. Hess was intimately involved in the investigation conducted by the Commission against me, including at least one telephone conversation with an expert witness who was later brought in to testify against me, during which he discussed and directed that witness' testimony.

¶ 25 The documents that Ryckman sought to compel ASC to produce in the trial court pertained to alleged unfairness and irregularities in the January 1996 hearing before ASC and the events that preceded it. Had Ryckman made an adequate record before the ASC Hearing Panel concerning ASC's refus-al to disclose these documents for Ryckman's use at the administrative hearing, Ryckman could have appealed the issue, to the extent permitted by Alberta provincial law, and argued that it required reversal of the administrative decision. As we have noted, however, Ryckman abandoned his appeal and has offered nothing of substance to demonstrate that he did so as a result of a fraud or other violation of basic due process rights.

¶ 26 If the existence or legal significance of the documents did not become known until after the administrative hearing, Ryckman had a potential remedy in the Alberta judicial system. Ryckman averred below that when he became aware of the "numerous facts" on which he based his motion to compel in the superior court, he "retained a law firm in Canada to investigate and research the matter, and then file a Statement of Claim to attack the Hearing Panel's Decision based upon the biased nature of the investigation and proceedings." Although Ryckman allegedly became aware of these facts "in mid–1998" and the law firm may have been researching and investigating since that time, Ryckman has never sought relief in Canada from the judgment of the Court of Queen's Bench based on those or any other allegations. Indeed, as far as the record reveals, he came forward with the new allegations only after ASC brought this action against him to domesticate its Alberta judgment in Arizona in March 1999. One of Ryckman's attorneys explained this by averring that without discovery of the documents sought through the Maricopa County Superior Court in ASC's action, Ryckman "will be unable to complete the necessary factual basis for the drafting and filing of a Statement of Claim in Canada to set aside or invalidate the Decision and the Variation Order."

¶ 27 We are unable to credit the proposition that Ryckman's bid to mount a collateral attack on the Alberta judgment in Canada depended on ASC's fortuitous decision to bring an action to domesticate it in an American court. Ryckman has nowhere argued that discovery procedures are unavailable in Alberta in connection with a motion to set aside a decision of the ASC. Further, Ryckman has cited no authority for the proposi-

tion that relief should be granted under Rule 56(f) to allow preparatory discovery in aid of legal actions that parties say they plan eventually to bring in other jurisdictions.

¶ 28 Ryckman has not attempted to demonstrate that the Canadian judicial system "does not provide impartial tribunals or procedures compatible with due process of law." *Restatement* § 482(1)(a). No authority of which we are aware supports the view, implicit in Ryckman's bid for reversal, that an obligor on a foreign nation's judgment is entitled, in opposing a domestication action, to litigate for the first time arguments that are still open for him to raise in proceedings before presumptively fair and competent foreign courts.

¶ 29 Comment *e* to *Restatement* § 482 states that if the judgment in question could be set aside in the foreign nation's court, a court of the United States should stay the domestication action to give the judgment debtor an opportunity to seek such relief. The Ryckmans requested no stay, but rather sought an opportunity to collaterally attack the Alberta judgment in the Arizona courts. We think a reasonable corollary to *Restatement* § 482 comment *e* is that when a judgment debtor has already had an opportunity to seek relief from a foreign nation's judgment in that nation's courts but has not pursued it, a court in the United States is not required to provide a second opportunity for him to do so.

¶ 30 For these reasons, we determine that the documents that Ryckman sought to discover were not material to the issues legitimately before the trial court in ASC's domestication action, and that the court accordingly did not abuse its discretion in failing to grant Ryckman's request for relief under Rule 56(f).

### D. *Enforceability of Judgment Against Elaine Ryckman's Property*

¶ 31 The Ryckmans point out that Arizona Revised Statutes ("A.R.S.") § 25–215(D) (2000) requires joinder of both spouses be-

fore a judgment on an obligation incurred by one spouse may be enforced against community property. Because Elaine Ryckman was not joined as a defendant before ASC or the Court of Queen's Bench of Alberta, the Ryckmans contend that the trial court erred in holding that its judgment was enforceable against Elaine Ryckman's separate property and her share of the Ryckmans' community property.

¶ 32 We do not understand ASC to have argued below that Elaine Ryckman was personally liable on the judgment to the extent of any separate property she may own. ASC's claim, and the trial court's ruling, was that the Ryckmans' community property was liable to satisfy the judgment. Consistent with its position below, ASC argues:

> The trial court properly recognized that the Canadian judgment against Lawrence Ryckman is a valid judgment that may be satisfied in Arizona out of the community property of Lawrence and Elaine Ryckman, in addition to the separate property of Lawrence Ryckman.

Answering Brief at 31. The judgment does not reach Elaine Ryckman's separate property.[3]

¶ 33 The Ryckmans are wrong in arguing that due process principles precluded entry of a judgment enforceable against their community property. In *National Union Fire Insurance Co. v. Greene*, 195 Ariz. 105, 108–11, ¶¶ 13–23, 985 P.2d 590, 593–96 (App.1999), we held that a judgment rendered against one spouse in a non-community property jurisdiction may be enforced against the community's property consistent with due process as long as (1) the obligation on which the foreign judgment was based would have been a community obligation if it had been incurred in Arizona, A.R.S. § 25–215(C), and (2) the non-defendant spouse is joined in the Arizona domestication action and has an opportunity to contend that the foreign judgment was based on an obligation of the other spouse that would have been separate if incurred in Arizona.

---

**3.** Because the judgment might be interpreted otherwise, however, we modify it to so state

explicitly. *See infra* ¶ 40.

¶ 34 Elaine Ryckman was joined in the Arizona domestication action and was provided the opportunity to contest enforcement of the judgment against the Ryckmans' community property. She provided no evidence that the judgment debt was strictly a separate obligation of Lawrence Ryckman. The Ryckmans were married while Lawrence Ryckman engaged in the business activities that gave rise to the judgment. There is no evidence that Ryckman was not acting for the benefit of the marital community when he engaged in these activities. *See Cadwell v. Cadwell*, 126 Ariz. 460, 463, 616 P.2d 920, 923 (App.1980) (stating that intentional tort or crime committed while spouse was acting to some extent for benefit of community subjects community assets to liability to satisfy judgment based on such acts). The obligation that those activities generated in Alberta accordingly would have been a community obligation if the activities had occurred in Arizona.

¶ 35 The Ryckmans argue, however, that *Greene* is distinguishable from this case because *Greene* concerned a judgment of a sister state that was entitled to recognition in Arizona not under the common law, but rather under the Full Faith and Credit Clause, U.S. Const. art. IV, § 1. They argue that the court decided *Greene* as it did only because the Full Faith and Credit Clause overrides section 25–215(D) and thus precludes Arizona courts from refusing to enforce sister states' judgments against community property on the ground that one spouse was not joined as a defendant in the rendering jurisdiction. They contend that, in contrast, the rules governing recognition of foreign nations' judgments do not override the joinder rule of A.R.S. § 25–215(D), and that any recognition of ASC's Canadian judgment should therefore have been limited to Lawrence Ryckman's separate property.

¶ 36 We agree that the Full Faith and Credit Clause and the common law rules for recognition of foreign nations' judgments are distinct bases for domesticating judgments in Arizona. We do not agree, however, that the Full Faith and Credit Clause supplies the only legal rationale on which the joinder rule

of A.R.S. § 25–215(D) may be deemed inapplicable.

¶ 37 As we observed above, *Restatement* § 481 gleans from the common law the principle that a foreign nation's final judgment is entitled to recognition in American courts except under specific circumstances. Section 482 nowhere suggests that a foreign judgment need not be recognized unless the plaintiff's action in the rendering jurisdiction complied with all the procedural rules of the recognizing state.

¶ 38 The only ground that Ryckmans' contention might satisfy is that which would permit a court in the United States to decline to recognize a foreign nation's judgment if "the cause of action on which the judgment was based, or the judgment itself, is repugnant to the public policy of the United States or of the State where recognition is sought." *Restatement* § 482(2)(d). *Restatement* § 482 comment *f,* however, makes clear that the public policy exception to the general rule of recognition is quite narrow and is aimed at denying recognition of judgments "based on claims perceived to be contrary to fundamental notions of decency and justice." Holding the Ryckmans liable to pay a community debt from community property does not violate any fundamental principles of justice.

¶ 39 We likewise conclude that A.R.S. § 25–215(D), the statutory rule requiring joinder of a spouse in an Arizona action seeking recovery from community property, is not integral to "fundamental notions of decency and justice." We made this point in *Greene:*

An Arizona court may not impress Arizona procedural law upon a foreign judgment and refuse to recognize that judgment merely because Arizona law was not followed in obtaining it.

. . . .

We live in a mobile society: it is commonplace for people to move from state to state as they pursue job opportunities and better living conditions. Inevitably, some judgment-debtors in non-community property states will move to Arizona, where community property is the law. It would

**550**

be asking too much to require the creditor to foresee such a move, and to comply with Arizona laws at the time it files the original suit.

195 Ariz. at 108, ¶ 11, 110, ¶ 18, 985 P.2d at 593, 595. These principles apply with equal force to judgments rendered by courts of foreign nations as to those rendered by courts of foreign states of the United States. Refusal to recognize a foreign nation's judgment for failure to comply with Arizona procedural law would go well beyond the limitations described in *Restatement* §§ 481 and 482 and might encourage flight to Arizona to avoid legitimate obligations justly imposed by foreign nations' courts of competent jurisdiction.

### CONCLUSION

¶ 40 The trial court correctly granted summary judgment for ASC on its Canadian judgment against the Ryckmans. The trial court did not abuse its discretion in failing to postpone consideration of ASC's motion for summary judgment to allow further discovery. Nor did the trial court err in declining to limit enforcement of its judgment to Lawrence Ryckman's separate property. We modify the judgment, however, to clarify that the judgment may be satisfied from the Ryckmans' community property as well as Lawrence Ryckman's separate property; Elaine Ryckman's separate property shall not be liable to satisfy the judgment.

CONCURRING: CECIL B. PATTERSON, JR., Presiding Judge, and NOEL FIDEL, Judge.