In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2327

James L. Gagan,

Plaintiff-Appellee,

v.

James A. Monroe,

Defendant-Appellant.

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 87 C 732--Andrew P. Rodovich, Magistrate Judge.

Argued March 1, 2001--Decided October 23, 2001


   Before Harlington Wood, Jr., Manion, and
Diane P. Wood, Circuit Judges.

   Diane P. Wood, Circuit Judge.  In 1994,
James Gagan won a civil RICO verdict in
the Northern District of Indiana against
James Monroe and several other
defendants, and in 1996, we affirmed the
judgment in Gagan's favor. That should
have been the end of things, but it was
not. Monroe has not paid his judgment
debt to Gagan, and Gagan has been forced
to turn to compulsory methods to collect.
He filed the present postjudgment action
in the district court as part of that
effort, seeking an order requiring Monroe
to turn over his interest in a cable
company located in Arizona, where Monroe
resides. The district court entered the
turnover order, and Monroe has appealed,
arguing that the order was improper for
reasons stemming from Arizona community
property law. We find no fault with the
turnover order and affirm the judgment of
the district court.

I

   Gagan and Monroe were both participants
in the cable television industry. Gagan
invested in a cable television limited
partnership in which Monroe was the
general partner, but the partnership was
unsuccessful. This ultimately led to
Gagan's RICO suit against fourteen
individual and corporate defendants,

Monroe among them. The details of the underlying suit, which was commenced in 1987, are set out in our earlier decision affirming a verdict in Gagan's favor, see Gagan v. American Cablevision, Inc., 77 F.3d 951 (7th Cir. 1996).

In addition to the limited partnership with Gagan, Monroe has been involved in at least one other cable television endeavor. In 1982, he and a partner, Victor Sharar (who was also a defendant in Gagan's RICO suit), formed an Arizona general partnership, Apache Cablevision, to provide cable service to the San Carlos Apache Indian Reservation. As far as appears from the record, substantially all of Apache's assets are located in Arizona. Monroe and Sharar operated Apache as a general partnership until 1992, when they converted it to a limited partnership. At that time, Monroe and Sharar created an Arizona corporation, Gila River Cablevision, Inc., in which they each owned 50% of the stock. Gila River became the general partner in Apache and owned 1% of that partnership. The remaining interests in Apache were held equally by Monroe, his wife LaJunta Monroe, Sharar, and his wife Lois Sharar. The Monroes, Arizona residents, have been married since before the formation of Apache.

Through his RICO suit, Gagan won judgments against Monroe for $1.71 million and against Sharar for $1.76 million, but the defendants did not pay as they should have done. Federal Rule of Civil Procedure 69(a) allows a judgment creditor in such a situation to return to the district court where the judgment was entered and seek the district court's assistance in enforcing the judgment. Taking advantage of this provision, Gagan returned to the Northern District of Indiana and filed this action, seeking an order requiring Monroe and Sharar to turn over their and their wives' interests in Gila River and Apache. The district court first determined that the transfers of interests to Mrs. Monroe and Mrs. Sharar were fraudulent transfers in anticipation of the RICO judgment, and accordingly voided those transfers. The court then ordered Monroe and Sharar to turn over all of their interests in Gila River and Apache to Gagan. Sharar has not appealed, and so we know nothing about the state of his compliance with that order. Monroe,

however, has appealed the district court's order, arguing that it does not comport with Arizona's community property law.

## II

As an initial matter, we must review choice of law principles to determine the extent to which Arizona's community property law applies in this ancillary proceeding in federal court in Indiana. Federal Rule of Civil Procedure 69(a), which governs this action, specifies that "proceedings supplementary to and in aid of a judgment . . . shall be in accordance with the practice and procedure of the state in which the district court is held." The district court here is the court for the Northern District of Indiana, which means that the first law to which we turn for determining the procedures by which Gagan may enforce his judgment is the state law of Indiana. Indiana's procedural rules allow courts to issue orders requiring a judgment debtor to turn over property, on pain of contempt, if the judgment creditor affirms that a levy of execution is not likely to satisfy the judgment and if the property the creditor seeks is not exempt from execution. See Ind. Code sec. 34-55-8-7; Ind. R. Trial P. 69(E). Gagan proved to the district court's satisfaction that a levy of execution was unlikely to be successful in this case, so the sole remaining question is whether the property Gagan seeks would be exempt from execution. In determining whether personal property such as the Monroes' interests in Gila River and Apache is subject to execution, Indiana law looks to the law of the state in which the property was located at the time the debt arose. Jackson v. Russell, 533 N.E.2d 153, 155 (Ind. Ct. App. 1989). The properties involved in this case are ownership interests in an Arizona corporation and an Arizona partnership, the assets of which, as far as the record reveals, were located entirely in Arizona at the time Monroe's debt to Gagan arose in 1994. As the district court recognized, therefore, whether Monroe could be ordered to turn over his interests in Gila River and Apache turned on whether those interests were exempt from execution under Arizona law.

The district court concluded that they

were not exempt, and thus issued its turnover order. The sole question on the merits before us is whether this conclusion was correct. Arizona is a community property state, and because Monroe acquired his interests in Apache and Gila River after his marriage, the interests were presumptively property of the Monroes' marital community. See Ariz. Rev. Stat. sec. 25-211. Although the district court found that Monroe's 1992 transfer of half his interest in Apache to Mrs. Monroe was void as a fraudulent transfer, and the parties have spent con siderable time addressing this issue, that question is beside the point. Because the property belonged to the Monroes' marital community before Monroe transferred it into his wife's name, and it remained property of the marital community after the transfer, the transfer itself had no practical effect on Mrs. Monroe's claim. Under Arizona community property law either Gagan would be able to execute his judgment against all of the Monroes' marital property, or he would be unable to execute the judgment against any of it. Whether the property happens to be titled in Mr. or Mrs. Monroe's name makes no difference.

Monroe's primary argument on appeal is that, by virtue of certain details of Arizona's community property law, Arizona would not permit Gagan to execute his judgment against any of the Monroes' community property. Arizona law provides generally that "[t]he community property is liable for a spouse's debts incurred outside of this state during the marriage which would have been community debts if incurred in this state." Ariz. Rev. Stat. sec. 25-215(C). Neither party has specifically addressed the question whether the judgment against Monroe can be considered a community debt. However, Monroe's fraudulent conduct, if successful, would have enriched the marital community, and so under Arizona law it would be treated as a community debt. See Selby v. Savard, 655 P.2d 342, 349 (Ariz. 1982) ("The Arizona rule is that the community is liable for the intentional torts of either spouse if the tortious act was committed with the intent to benefit the community, regardless of whether in fact the community receives any benefit."). So far, it would appear that Gagan could reach the Monroes' community property in

satisfaction of his judgment. But a procedural quirk of Arizona law complicates matters. Another statute, Ariz. Rev. Stat. sec. 25-215(D), provides that "[i]n an action on [a community] debt or obligation the spouses shall be sued jointly . . . ." Monroe argues that this statute creates a substantive protection for community property and that, because Gagan did not join Mrs. Monroe in the underlying RICO suit, he cannot now reach the Monroes' community property.

Monroe's position is not without support in Arizona caselaw. In a 1983 decision, the Arizona Court of Appeals held that a judgment creditor could not reach the community property of an Arizona couple to satisfy a judgment rendered by the Minnesota courts, even if the underlying cause of action could have been considered a community debt, because the wife was not made a party to the Minnesota suit. Vikse v. Johnson, 672 P.2d 193 (Ariz. Ct. App. 1983). In reconciling what are now sec. 25-215(C) and sec. 25-215(D), the court stated:

The reason for the statutory provision making the community liable for community obligations incurred outside the state is to protect the rights of those creditors regardless of the fact that the obligation was not incurred in Arizona. In order to have the advantage of this provision, however, the creditor must join both spouses and thereby have personal jurisdiction over the community.

Id. at 195. The court of appeals reaffirmed this position in 1989. C&J Travel, Inc. v. Shumway, 775 P.2d 1097, 1100 (Ariz. Ct. App. 1989). Following these cases, we held in 1996 that sec. 25-215(D) requires that both spouses be joined in the underlying litigation in order for a judgment creditor to reach their Arizona community property, Northwestern Nat'l Ins. Co. v. Schubach, 93 F.3d 386 (7th Cir. 1996), and concluded that, "[i]n the end, creditors who deal with debtors . . . from community property states must take care that they have brought the right parties into the litigation." Id. at 390. These cases suggest that sec. 25-215(D) creates a substantive right for the community to be sued jointly before any community property can be reached to satisfy a

judgment. If Vikse and C&J Travel represented the current state of Arizona law on this question, we would be compelled to hold for Monroe.

Three more recent Arizona Court of Appeals cases, however, convince us that the Arizona courts have revised their interpretation of sec. 25-215(D)'s applicability to judgments rendered out of state. In Oyakawa v. Gillett, 854 P.2d 1212 (Ariz. Ct. App. 1993), the plaintiff won a defamation judgment against the defendant in California. When the defendant moved to Arizona with his wife, the plaintiff went back to the California court and obtained a declaration that, under California law, the judgment against the husband was binding on the marital community. The Arizona court enforced the judgment against the community on the grounds that it was required to give full faith and credit to the California declaration and that the California procedures provided adequate protection for the wife's interest in the property. Id. at 1214-15. Although the case can be read narrowly as dealing only with the interaction between California's community property laws and Arizona's, the decision would not have been possible if the Arizona courts were not willing to recognize out-of-state procedures as adequate to protect the spouse's interest, even if those procedures do not mirror Arizona's.

A more recent case, National Union Fire Ins. Co. of Pittsburgh v. Greene, 985 P.2d 590 (Ariz. Ct. App. 1999), substantially expands on this aspect of Oyakawa. In that case, the Arizona Court of Appeals enforced a New York judgment in which only the husband was a named defendant against a couple's Arizona community property. In reaching that decision, the court of appeals held that sec. 25-215(D) is merely a procedural rule that has no relevance to judgments in cases brought outside Arizona. As the court explained, "[a]n Arizona court may not impress Arizona procedural law upon a foreign judgment and refuse to recognize that judgment merely because Arizona law was not followed in obtaining it." Id. at 593. In contrast to the Vikse approach, in National Union the court reconciled sec. 25-215(D) with sec. 25-215(C) by holding that sec. 25-215(C) establishes a substantive rule--debts incurred out-of-

state can be satisfied with community property if they would have been community debts if incurred in Arizona-- and that sec. 25-215(D) merely sets out the procedure by which the Arizona courts protect the spouse's interest in the community property in suits brought in Arizona. Id. Indeed, the court recognized that New York law would have prevented the plaintiff from joining the defendant's wife in his earlier action, and it therefore refused to use its state procedural rules to prevent enforcement of the judgment and make Arizona a "haven for debtors." Id. at 595.

Earlier this year, the court of appeals again affirmed that sec. 25-215(D) has minimal application to judgments arising outside of Arizona. Alberta Securities Comm'n v. Ryckman, 30 P.3d 121 (Ariz. Ct. App. 2001). This time enforcing a Canadian judgment against community property, the court found that both the Full Faith and Credit Clause, U.S. Const. art. IV, sec. 1, and Arizona common law override sec. 25-215(D), precluding Arizona courts from refusing to recognize judgments from other jurisdictions on the ground that one party was not a named defendant. Id. at 130. Instead, such judgments would be upheld as long as "the obligation on which the foreign judgment was based would have been a community obligation if it had been incurred in Arizona" and there is an opportunity for the spouses to contest that finding. Id. at 129-30.

We have already determined that the judgment against Monroe was a community obligation under Arizona law, a finding the Monroes have had adequate opportunity to contest. Furthermore, it would not have been possible for Gagan to join Mrs. Monroe in the original action, as there are no allegations she has ever violated the RICO laws. While we recognize that the Arizona Supreme Court has yet to weigh in on this issue, following the recent trend in National Union and Alberta Securities we believe the Arizona courts would hold that Gagan can execute his federal RICO judgment against the Monroes' community property, regardless of the fact that Mrs. Monroe was not joined in the underlying lawsuit. Therefore, we conclude that the district court's turnover order against Monroe was proper.

Before closing, we briefly address one additional point. Monroe argues that, even if it would be otherwise possible for Gagan to reach the Monroes' community property, Mrs. Monroe has a due process interest in protecting this property, and that she therefore was entitled to notice and an opportunity to be heard before the district court could order the turnover. Whether Mrs. Monroe has a due process interest in protecting the community property is, of course, a question of federal constitutional law. Shegog v. Board of Ed. of Chicago, 194 F.3d 836, 838-39 (7th Cir. 1999). Property interests, however, are not created by the Constitution; rather, "they are created and their dimensions are defined by existing rules . . . that stem from an independent source such as state law." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). To determine whether Mrs. Monroe had the kind of interest in the Monroes' community property that the Due Process Clause protects, we must look at how Arizona has defined the scope of Mrs. Monroe's interest in that property.

Turning once again to Arizona's community property statutes, we find that Mrs. Monroe does not have the type of interest in the community's property that would entitle her to notice and an opportunity to be heard before Monroe can be ordered to turn over the property. As a general rule, Arizona allows either spouse to alienate or dispose of community property as he or she wishes, without the consent of the other spouse. See Ariz. Rev. Stat. sec. 25-215(D) ("Except as prohibited in sec. 25-214, either spouse may contract debts . . . ."); sec. 25-214(C) ("Either spouse separately may acquire, manage, control or dispose of community property or bind the community . . . ."). Section 25-214(C) lists a few exceptions to this general rule: the consent of both spouses is required before the community can be bound (1) in most transactions involving real property, and (2) in transactions of guaranty, indemnity or suretyship. The Monroes' interest in Gila River and Apache does not fall into either of these categories, which means that under Arizona law, Monroe was free to dispose of these assets as he chooses without his wife's consent.

The specific mechanism the trial court employed in aid of Gagan's judgment is of some importance here. The court did not issue a writ of execution against the Monroes' property; in fact, it most likely could not have done so against property located outside of Indiana. Cf. 28 U.S.C. sec. 1963 (providing for registration of federal judgments in the district where property sought to be executed against is located). Instead, the court ordered Monroe, on pain of contempt, to turn the community's interests in the properties over to Gagan. The court had jurisdiction over Monroe and unquestionably had the authority to enter such an order against him. Nothing in the order runs directly against Mrs. Monroe, and she will suffer no consequences if her husband defies the order. Further, under Arizona law, it is clear that Monroe has it in his power to comply with the order without notice to or consent by his wife. Under these circumstances, we hold that the district court's turnover order did not implicate Mrs. Monroe's due process rights.

Because we find that, under Arizona law, Gagan would have been able to execute his judgment against the Monroes' interests in Apache Cablevision and Gila River Cablevision, the turnover order was authorized. We therefore Affirm the judgment of the district court.